

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD–0408–12

**RODNEY YOUNG ANDERSON, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE NINTH COURT OF APPEALS
MONTGOMERY COUNTY**

**MEYERS, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Appellant, Rodney Anderson, was charged with possession of methamphetamine

with intent to deliver, over four grams but less than 200 grams, and aggravated assault of

a public servant.[1]  The jury found him guilty, and he was sentenced to 40 years'

imprisonment in the Texas Department of Criminal Justice–Correctional Institution

Division for the possession offense, and life imprisonment for the aggravated assault.

---

[1]The aggravated assault charge alleged that Appellant used or exhibited a deadly weapon,
a motor vehicle, to threaten the officer with serious bodily injury.

Appellant appealed, asserting that the evidence was legally insufficient to support his conviction of aggravated assault of a public servant. The court of appeals held that a rational jury could find that Appellant was guilty of aggravated assault of a public servant under the conspiracy theory of party liability. *Anderson v. State*, No. 09-10-00061-CR, 2011 Tex. App. LEXIS 10038 (Tex. App.–Beaumont December 21, 2011) (not designated for publication). Appellant filed a petition for discretionary review, which we granted to consider whether the court of appeals erred in holding that the evidence was legally sufficient to support Appellant's conviction for aggravated assault under the law of parties in Texas Penal Code Section 7.02(b). We hold that the evidence is sufficient to support Appellant's conviction for the aggravated assault charge under the conspiracy theory of the law of parties. We will affirm the judgment of the court of appeals.

## FACTS

Appellant and Timothy Sherber had sold methamphetamine to Jeffery Harmon on numerous occasions. Harmon, who was acting as a paid confidential informant for the Texas Department of Public Safety, arranged to meet Appellant and Sherber in a parking lot to purchase methamphetamine. Appellant and Sherber arrived at the arranged location in Sherber's truck, and Harmon approached Appellant, who was sitting on the passenger side. When Appellant showed Harmon the drugs, Harmon removed his hat, which was a signal to the undercover officers waiting in the parking lot. On Harmon's signal, the undercover officers pulled their weapons, identified themselves as police, and yelled at

Appellant and Sherber to get out of the vehicle. Instead, Sherber backed his truck out of the parking space before officers were able to block him in. One of the officers who approached Sherber's truck on foot struck the driver's side window with the barrel of his gun and repeatedly yelled at Sherber to stop.

As he attempted to flee, Sherber hit two unmarked patrol cars. One of the detectives fired his weapon several times, and Appellant suffered a gunshot wound to the chin. Sherber continued to drive forward and hit the side of a marked patrol car as he exited the parking lot. The officer driving the marked patrol car was injured in this collision. Another officer rammed the side of Sherber's truck to bring it to a stop, and Appellant and Sherber were arrested. Officers searched Sherber's truck and found a plastic bag containing methamphetamine on the passenger side of the floorboard. They also collected loose methamphetamine from inside Sherber's truck and on the ground outside the passenger door. Appellant was tried by a jury and found guilty of possession with intent to deliver four grams or more but less than 200 grams of methamphetamine and with aggravated assault on a public servant. He was sentenced to 40 years' imprisonment in the Texas Department of Criminal Justice-Correctional Institution Division for the possession charge, and life in prison for aggravated assault.

**COURT OF APPEALS**

Appellant appealed, contending that the evidence was legally insufficient to sustain his conviction of aggravated assault of a public servant. The court of appeals

noted that the jury charge in this case authorized the jury to convict Appellant of aggravated assault if the jury determined beyond a reasonable doubt that 1) Appellant intended to promote or assist Sherber in the aggravated assault of the officer; or 2) the aggravated assault was committed by Sherber in furtherance of a conspiracy to commit the felony offense of possession with intent to distribute a controlled substance, and that Appellant should have anticipated that an aggravated assault of a public servant could result from the parties' carrying out their conspiracy. *Anderson*, 2011 Tex. App. LEXIS 10038 at *15-16. The court of appeals evaluated whether Appellant's conviction could be affirmed under a conspiracy theory and determined that,

> [b]ased on the evidence, it was reasonable for the jury to infer from the circumstances that Sherber committed the aggravated assault in furtherance of his conspiracy with Anderson to commit the felony offense of possession with intent to deliver a controlled substance. The evidence is also sufficient to support the reasonable inference that Anderson should have anticipated that, under the circumstances of this case, police officers would face injury as a result of Sherber's attempt to flee.

*Id*. at *16-17. The court of appeals concluded that a rational jury could have found Appellant guilty under the conspiracy theory of the law of parties. Appellant filed a petition for discretionary review, which we granted to determine whether the court of appeals erred in holding that the evidence was legally sufficient to support Appellant's aggravated assault conviction under the conspiracy theory of the law of parties.

## ARGUMENTS OF THE PARTIES

### *Appellant's Arguments*

Appellant argues that the court of appeals erred in holding that the evidence was legally sufficient under the law of parties' conspiracy prong because Appellant did not anticipate the second felony of aggravated assault of a public servant, and thus cannot be guilty under the conspiracy theory of party liability. Appellant argues that it is well settled law that co-conspirators are responsible only for conduct they anticipate. Appellant contends that he had no reason to anticipate violence or assault because he and Sherber were conducting "a drug transaction between old friends who always and repeatedly bought and sold drugs peaceably and amicably." He also could not anticipate that the truck would be used as a deadly weapon because its obvious intended and immediate purpose was merely a means of transporting the men and the drugs. Appellant argues that the truck "does not fall into the category of obvious, apparent, and innately understood deadly weapons in the same fashion as a firearm or switchblade."

Finally, Appellant asserts that the application paragraph of the jury charge failed to instruct the jury to find that he should have anticipated the aggravated assault, and no rational juror could have found beyond a reasonable doubt that Appellant anticipated Sherber's actions. Because Appellant "could not anticipate, as a 7.02(b) conspiracy requires, the truck's use as a deadly weapon, and the jury was not instructed to first find this fact in the application paragraph of the charge, his conviction under 7.02(b) for party liability fails for insufficient evidence."

**State's Arguments**

The State argues that the evidence is sufficient to establish that Appellant should have anticipated aggravated assault of a public servant as a result of his conspiracy to distribute methamphetamine. Although the application paragraph of the jury charge did not include the "should have anticipated" language from Penal Code Section 7.02(b), the State points out that a review of the sufficiency of the evidence is based on a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Thus, the State contends that the court of appeals' analysis of the sufficiency of the evidence was correct.

The State says that case law supports a finding that Appellant should have anticipated violence as a result of his conspiracy to commit the felony offense of possession of a controlled substance with intent to distribute. *Ervin v. State*, 333 S.W.3d 187 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd); *Love v. State*, 119 S.W.3d 447 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd) (defendant should have anticipated that violence would occur when co-conspirator was armed with a deadly weapon); *Hernandez v. State*, 171 S.W.3d 347 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd); *Moore v. State*, 24 S.W.3d 444 (Tex. App.–Texarkana 2000, pet. ref'd) (even when co-conspirators were unarmed, a defendant should have anticipated that a deadly weapon might be acquired during the commission of the offense); *Rue v. State*, No. 05-97-00482-CR, 1998 Tex. App. LEXIS 3458 (Tex. App.–Dallas, June 10, 1998, no pet.) (defendant should have anticipated that his co-conspirator would commit aggravated assault when he tried to

flee the scene of the offense in his vehicle).

The State contends that a jury may make reasonable inferences from the evidence to determine whether a particular offense should have been anticipated as a result of carrying out the conspiracy. *Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007). The State says that it is well known that drug transactions include risks and that the jury made reasonable inferences from the evidence in determining that Appellant should have anticipated that his conspiracy to deliver drugs could result in the use of the truck in a violent effort to escape from law enforcement.

The State concludes that the question of whether Appellant should have anticipated the secondary felony is one for the jury and that the evidence, when viewed in the light most favorable to the verdict, is sufficient to establish Appellant's guilt as a party to the offense of aggravated assault under the conspiracy theory of the law of parties.

## APPLICABLE LAW

### *Standard of Review*

In assessing the legal sufficiency of the evidence to support a criminal conviction, the reviewing court must "consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979). When the record supports conflicting inferences, the reviewing court presumes that the trier of fact

resolved the conflicts in favor of the State and defers to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences from the evidence as long as each inference is supported by the evidence presented at trial, but they are not permitted to draw conclusions based on speculation. *Hooper*, 214 S.W.3d at 15. In *Hooper*, we explained that "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of the facts and evidence presented." *Id*. at 16. While a conclusion that is reached by speculation may not be completely unreasonable, such conclusion is not sufficiently based upon facts or evidence to support a conviction beyond a reasonable doubt. *Id*.

### Law of Parties

Texas Penal Code Section 7.02(b) states that "if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

When reviewing the sufficiency of the evidence, the essential elements of the offense are those of a hypothetically correct jury charge: "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes

the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

When the charge authorizes the jury to convict the defendant on more than one theory, as

it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any

theory authorized by the jury charge. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim.

App. 2004) (citing *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992)).

## ANALYSIS

For a defendant to be found guilty as a party to a secondary offense,[2] the jury must

determine that the second felony was committed in furtherance of the unlawful purpose

and was one that the co-conspirator should have anticipated as a result of carrying out the

conspiracy. TEX. PENAL CODE § 7.02(b). Section 7.02(b) does not require the State to

prove that Appellant actually anticipated the secondary felony, only that the crime is one

that *should* have been anticipated.

The hypothetically correct jury charge in this case would have included the

"should have been anticipated" language in the application paragraph. Thus, to find

Appellant guilty of aggravated assault of a public servant under Section 7.02(b), the jury

must have determined beyond a reasonable doubt that:

> (1) Appellant and Sherber engaged in an attempt to carry out a conspiracy
> to possess and deliver methamphetamine;
> (2) in that attempt, Appellant's co-conspirator committed aggravated assault
> of a public servant;
> (3) the aggravated assault was committed in furtherance of the conspiracy to

---

[2] In this context, a secondary offense is another felony that is committed by one of the conspirators during the attempt to carry out the originally agreed upon felony.

> possess and deliver methamphetamine; and
> (4) the aggravated assault was an offense that Appellant should have anticipated as a result of carrying out the conspiracy to commit the drug offense.

The question before us is whether it was rational for the jury to infer that Appellant should have anticipated the second offense. Because the party-conspirator theory of liability under which Appellant was convicted is similar to the federal rule of co-conspirator liability under *Pinkerton v. United States*, 328 U.S. 640 (1946),[3] we will adopt the approach used by federal courts, which focuses on an examination of the totality of the circumstances to determine whether, on the facts of each case, a particular offense committed by a co-conspirator was "reasonably foreseeable" within the scope of the unlawful agreement. *See id*.

In cases involving large-scale conspiracies to distribute drugs, federal courts have generally taken note of a link between the size of the drug operation and frequent use of weapons and violence. In such cases (for example, those involving tens of thousands of dollars worth of illicit drugs and/or multiple kilograms being sold in a single transaction), federal courts have typically applied the *Pinkerton* rule to find that co-conspirators' crimes involving violence or weapons were reasonably foreseeable to other members of the conspiracy, thereby triggering co-conspirator liability. *See, e.g., United States v. Dean*, 59 F.3d 1479, 1490 n. 20 (5th Cir. 1995) (taking note of "connection between the

---

[3]Under *Pinkerton*, co-conspirators are liable for the overt acts of every other conspirator done in furtherance of the conspiracy, but only if those acts were reasonably foreseeable.

amount of drugs involved in a transaction, and hence the amount of money, and the foreseeability for *Pinkerton* purposes" of a co-conspirator's use of weapons or violence); *Gutierrez*, 978 F.2d at 1468 (noting that "the illegal drug industry is a dangerous and violent business," and holding that, because defendants agreed to sell two kilograms of cocaine for $60,000, it was "reasonably foreseeable that a gun would be carried" in relation to the transaction); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting that "[w]hen an individual conspires to take part in a street transaction involving a kilogram of cocaine worth $39,000, it certainly is quite reasonable to assume that a weapon of some kind would be carried"); *but see United States v. Castaneda*, 9 F.3d 761, 767 (9th Cir. 1993) (reversing firearm-possession conviction under *Pinkerton* theory because defendant, wife of a high-level drug dealer, merely answered telephone and took messages, and thus played no more than a "passive role" in drug conspiracy), *overruled on other grounds*, *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000).

On the other hand, in recognition of the fact that small-scale drug operations are less likely to lead to the use of weapons or violence, federal courts have frequently found that co-conspirators' violent acts in furtherance of a drug conspiracy were not reasonably foreseeable in situations involving small quantities of drugs, small amounts of money, small-time drug dealers, or minor participants in the conspiracy. *See, e.g., United States v. Bingham*, 653 F.3d 983, 997 (9th Cir. 2011) (defendants with "extremely minor roles in the conspiracy" not liable for firearm possessed by co-conspirator); *United States v.*

*Wade*, 318 F.3d 698, 703-04 (6th Cir. 2003) (finding "scant evidence" to support finding of foreseeability as to co-conspirator's gun possession where defendant was "retail dealer" in $1,100 sale of crack); *United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994) (holding that co-conspirator's firearm possession was not reasonably foreseeable when gun was hidden from defendant's view and there was no evidence that conspiracy involved violence or large quantities of drugs). Among all relevant circumstances, federal courts have considered the quantity of the illegal narcotics, its value, the amount of money possessed by the conspirators, the degree of a defendant's involvement in the conspiracy, the prior relationship of the co-conspirators, the length of time that a defendant may have been involved in the drug trade, and the visibility of any weapons. *Wade*, 318 F.3d at 702.

Considering the totality of the circumstances in this case, we conclude that Appellant and Sherber were acting together in a criminal business to sell moderate amounts of methamphetamine and that, given the volume of drugs involved, Sherber's assault of the officer in this case was one that should have been anticipated as a result of the carrying out of the conspiracy. The intended delivery to the informant in this case was for two ounces of methamphetamine, an amount that suggests more than personal use. From the 8.51 grams of methamphetamine that were strewn throughout the truck, it appears that Appellant and Sherber intended to sell smaller amounts of methamphetamine to other people in the future. On the six prior occasions when Appellant sold

methamphetamine to the informant, the sales ranged from 3.8 grams to one ounce of methamphetamine, and Appellant told the informant that he was in the process of selling a total of one-half of a kilogram so that he could obtain another one-half of a kilogram to sell. Appellant had $3,500 cash in his possession when he was arrested in this case. These facts suggest that, although they were not likely engaged in the large-scale transfer of multiple kilograms and tens of thousands of dollars of drug money, Appellant and Sherber were more than just small-time dealers.

The prior and present relationship between Appellant and Sherber suggests that they were acting jointly to engage in the continuous operation of an enterprise to market and distribute methamphetamine in quantities of grams and ounces. On the six prior occasions when he sold methamphetamine to the informant, Appellant was usually accompanied by Sherber. Furthermore, on this occasion, Sherber drove Appellant across several Texas counties to deliver the drugs and sat in the driver's seat of the truck while Appellant discussed the sale with the informant. Because of the number of repeat transactions, the distance traveled to complete the sale, the quantity of drugs involved, and the amount of cash possessed, Appellant should have anticipated that he and Sherber might become the target of a thief or a police investigation, and that violence might be used either to protect the drugs or to escape.

As we stated in *Hooper*, juries are permitted to draw multiple reasonable inferences from direct or circumstantial evidence. 214 S.W.3d at 16. It was reasonable

for the jury to infer that Appellant should have anticipated that the police could bust the drug transaction, and reasonable for the jury to infer that Appellant should have anticipated that an officer could be injured while attempting to bust the drug transaction. The evidence supports the jury's finding that Appellant should have anticipated the aggravated assault of a public servant in furtherance of the conspiracy to commit the offense of possession of a controlled substance with intent to deliver. There is no indication that the jury engaged in speculation or guessing about the meaning of the evidence or facts to reach this conclusion.

## CONCLUSION

We conclude that a rational jury could find beyond a reasonable doubt that Appellant should have anticipated his co-conspirator committing aggravated assault of a public servant as a result of carrying out their conspiracy to deliver methamphetamine. The court of appeals properly held that the evidence was sufficient to support Appellant's conviction for aggravated assault of a public servant under the conspiracy theory of the law of parties. The judgment of the court of appeals is affirmed.


Delivered: November 27, 2013

Publish