**Affirmed and Memorandum Opinion filed March 18, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00305-CR

**LYNVAL MACLASA PEARSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 9403483**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Lynval Maclasa Pearson of murder and assessed punishment at 30 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant contends that the trial court erred by failing to instruct the jury *sua sponte* that Fortino Delangel was an accomplice as a matter of law and that, therefore, the State was required to present non-accomplice testimony sufficient to corroborate his testimony. We affirm.

### BACKGROUND

In 1993, Fortino Delangel was working at a used car dealership from which

appellant had purchased two vehicles. After the second purchase, appellant asked Delangel if he knew anyone who sold marijuana. Delangel contacted his brother-in-law, Jose Guerrero, and asked if he knew anyone who sold marijuana. In turn, Guerrero contacted Salvador Vargas. With Delangel and Guerrero acting as middlemen, appellant and Vargas agreed that appellant would purchase approximately thirty pounds of marijuana from Vargas. Delangel understood that appellant would compensate him for his participation, although the precise amount of that compensation was not clear.

Delangel, Guerrero, appellant, and an unidentified companion of appellant, drove in two cars to Room 28 at the Lafronda Motel in South Houston to meet with Vargas. Delangel and appellant rode in separate cars. Delangel testified that he had never met Vargas before that evening.

Vargas initially stated that only one individual could come into the room; he relented when appellant insisted that all four men be allowed to enter. Appellant's unidentified companion stood near the door inside the room and Delangel stood off to the side of the room with Guerrero while Vargas and appellant conducted the drug transaction.

Appellant asked Vargas about the marijuana, and Vargas replied, "[W]here is the money[?]" Appellant "opened his jacket" and said "[h]ere's the money." Delangel did not see what was in appellant's jacket, but assumed it was payment for the marijuana. Vargas removed a "suitcase" from under the bed and handed appellant a package of marijuana from the bag.

Appellant tore each package open with his teeth, smelled the marijuana, and told Vargas, "[T]his is the money." However, rather than give Vargas the money, appellant pulled out a gun and shot him in the chest. Vargas fell forward onto the floor of the room and died shortly thereafter. Appellant's companion also drew a gun, which he pointed at Delangel and Guerrero. Appellant then grabbed the bag with the packages of

2

marijuana and backed out of the motel room with his companion; both aimed their guns at Delangel and Guerrero. Before Delangel and Guerrero left the motel room, Roel Salinas, a coworker of Vargas, ran out of the bathroom holding a knife and frantically asked Delangel and Guerrero what had happened. Delangel called 911 from a payphone at the motel, and left with Guerrero because they were afraid appellant would find them and kill them.

Delangel and Guerrero soon fled to Mexico, but both voluntarily returned to Houston at the request of the police to give information about the murder. Shortly after the murder, Delangel positively identified appellant as the shooter. Officers executed an arrest warrant at appellant's house. After arresting appellant, police searched his house and recovered five full metal jacket nine millimeter bullets; four of the bullets found there were same brand as the casing discovered at the crime scene, which also came from a full metal jacket nine millimeter bullet. They also found two large empty black duffel bags, which they suspected were "part of the original drug room." A ballistics expert testified that the unfired cartridges found in appellant's house did not have sufficient individual characteristics to make an affirmative association with the fired casing found in the motel.

Appellant forfeited his bond and did not appear for trial in 1995. For the next 15 years, appellant traveled back and forth from New York to Jamaica using the alias Peter Richards. Appellant escaped detection due to an oversight in recording his fingerprints with the Texas Department of Public Safety and the Federal Bureau of Investigation. After resolution of the oversight, officers linked Peter Richards's photograph, fingerprints, and Jamaican passport to appellant's information and true identity, and apprehended appellant in New York in September 2010.

Guerrero testified, but denied any knowledge of appellant or the drug transaction.

Appellant did not ask the trial court to instruct the jury on the law concerning

3

accomplice-witness testimony, and did not object to the trial court's failure to give such instructions *sua sponte*. The jury found appellant guilty of murder and sentenced him to 30 years' confinement.

## ANALYSIS

We review claims of charge error under a two-pronged test. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Rolle v. State*, 367 S.W.3d 746, 757 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Rolle*, 367 S.W.3d at 757. If error exists, we then evaluate the harm caused by that error. *Ngo*, 175 S.W.3d at 743; *Rolle*, 367 S.W.3d at 757. The degree of harm required for reversal depends on whether error was preserved in the trial court. When error is preserved in the trial court by timely objection, the record must show only "some harm." *Rolle*, 367 S.W.3d at 757. If error was not objected to, then it must be "fundamental error" and requires reversal only if it was so egregious and created such harm that the defendant has not had a fair and impartial trial. *Id*.

An accomplice is any person who, with the requisite culpable mental state, participated with the accused before, during, or after the crime by performing some affirmative act that promoted its commission. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). An accomplice-witness instruction is required when the evidence raises the question of whether a witness is an accomplice under a party-conspirator theory. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005); Tex. Penal Code Ann. § 7.02(b) (West 2011); *Zamora v. State*, 411 S.W.3d 504, 512 (Tex. Crim. App. 2013).

Art. 38.14 of the Texas Code of Criminal Procedure provides that a conviction may not be obtained on the uncorroborated testimony of an accomplice to the crime. A person is considered an accomplice as a matter of law if he could be prosecuted for the

4

same offense as the defendant or for a lesser included offense. *Blake v. State*, 971 S.W.2d 451, 454–55 (Tex. Crim. App. 1998). The test is whether there is sufficient evidence in the record to support a charge against the witness alleged to be an accomplice. *Id.* at 455. If the evidence clearly shows that the witness was an accomplice as a matter of law, the trial court must so instruct the jury; otherwise, the court should present the matter for consideration by the jury. *Id.* An accomplice as a matter of law instruction is proper only if "there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law." *Id.* (quoting *DeBlanc v. State*, 799 S.W.2d 701, 708 (Tex. Crim. App. 1990)).

Appellant argues Delangel was an accomplice as a matter of law to the offense of delivery of marijuana. *See* Tex. Health & Safety Code Ann. § 481.120 (West 2010). He further argues that he was also an accomplice as a matter of law to murder because, under article 7.02(b) of the Code of Criminal Procedure, he could have also been indicted for murder because murder was a foreseeable act of his co-conspirators. Appellant argues Delangel could have foreseen the murder as a foreseeable act of the marijuana transaction because, "Even a person as naïve as Mr. Delangel painted himself to be, would surely have heard of drug deals in which someone ends up dead."

The evidence reflects that Delangel acted as a "middleman" introducing appellant to Vargas through another intermediary, Guerrero. Delangel did not have an opportunity to discuss the transaction with appellant beforehand because he did not drive with appellant to the motel. There is no evidence that Delangel knew appellant was carrying a weapon or knew that appellant did not intend to pay for the marijuana. When appellant purportedly showed Vargas the money for the marijuana, Delangel was not in a position to see what appellant was showing Vargas, or to determine whether appellant had a weapon. According to his testimony, Delangel had only met appellant as a customer of the used car dealership, and had no knowledge of whether appellant had violent

5

tendencies or violent intentions regarding this drug transaction. Jerome Hill, a South Houston police officer, testified that the police department never treated Delangel and Guerrero as suspects, but considered them witnesses to the offense.

Appellant cites *Anderson v. State*, 416 S.W.3d 884, 890–91 (Tex. Crim. App. 2013) and *Nava v. State*, 379 S.W.3d 396, 406–07 (Tex. App.—Houston [14th Dist.] 2012), *aff'd*, 415 S.W.3d 289 (Tex. Crim. App. 2013), in support of his argument that Delangel should have anticipated the murder as a result of carrying out the conspiracy to purchase marijuana. The facts presented in each of these cases are distinguishable from the facts of this case.

In *Anderson*, the evidence showed that Anderson and his accomplice were acting together in a criminal business to sell moderate amounts of methamphetamine. 416 S.W.3d at 890. They had made several sales to an undercover DPS officer. *Id.* at 887. The last sale they made to the undercover officer resulted in their arrest for possession with intent to deliver methamphetamine and assault of a public servant. *Id.* at 885. At the conclusion of the drug transaction, when the undercover officer gave the arrest signal, Anderson's accomplice backed his truck out of a parking space before the officers could block him in. *Id.* at 886. One of the officers tapped the driver's side window with the barrel of his gun and repeatedly told the accomplice to stop. *Id.* Rather than stop, the accomplice attempted to flee hitting two unmarked patrol cars. *Id.* As he exited the parking lot, the accomplice hit a marked patrol car injuring the officer who was driving. *Id.* Another officer drove his vehicle into the side of the accomplice's truck, and Anderson and his accomplice were arrested. *Id.*

Anderson was convicted of possession with intent to deliver methamphetamine and aggravated assault of a public servant. *Id.* at 887. The jury was instructed that it could find Anderson guilty under the conspiracy theory of party liability. *Id.* at 885–86; *see also* Tex. Penal Code Ann. § 7.02(b). The court of criminal appeals determined that

the evidence was sufficient to support Anderson's conviction for the aggravated assault charge under the conspiracy theory of the law of parties. *Anderson,* 416 S.W.2d at 886. In finding the evidence sufficient, the court relied on the "prior and present relationship" between Anderson and his accomplice, and the fact that they "were acting jointly to engage in the continuous operation of an enterprise to market and distribute methamphetamine in quantities of grams and ounces." *Id.* at 891. Anderson and the accomplice had sold methamphetamine to the informant on six prior occasions. *Id.* On the occasion that resulted in their arrest, the accomplice drove Anderson across several Texas counties to deliver drugs. *Id.* The court determined "[b]ecause of the number of repeat transactions, the distance traveled to complete the sale, the quantity of drugs involved, and the amount of cash possessed, [Anderson] should have anticipated that he and [the accomplice] might become the target of a thief or a police investigation, and that violence might be used either to protect the drugs or to escape." *Id.*

In *Nava*, the defendant, Nava, and several co-conspirators were targets of a sting operation involving the sale of stolen television sets. 379 S.W.3d at 401–02. At the time undercover officers delivered the stolen televisions to Nava and his co-conspirators, arresting officers did not receive the proper arrest signal and were delayed in coming to the scene. *Id.* at 402. The undercover officers were reluctant to turn over the keys to the truck carrying the stolen televisions, which caused one of the co-conspirators to become suspicious. *Id.* When the undercover officers would not turn over the keys to the truck, the co-conspirator shot an undercover officer. *Id.* The officer returned fire and the co-conspirator died at the scene. *Id.* at 403. Nava was convicted of felony murder and organized criminal activity. *Id.*

On appeal, Nava argued that the evidence was insufficient to support a finding that the shooting should have been anticipated as a result of carrying out the conspiracy to commit theft. *Id.* at 406. This court concluded that theft is not a crime that inherently

entails the threat of violence; however, the evidence at trial was sufficient to support a finding that Nava should have anticipated a shooting would occur under those circumstances. *Id.* Notably, we determined that the circumstantial evidence supported a finding that Nava and his co-defendant knew a gun was brought to the parking lot where the televisions were to be delivered. *Id.* at 406–07.

A matter-of-law instruction would not be warranted here even if we were to assume that some evidence arguably pointed to criminal liability on the part of Delangel as an accomplice to murder. *Anderson* and *Nava* addressed whether the evidence was sufficient to support a conviction. In both cases, the courts determined that the evidence raised a fact question as to whether the accomplice could be convicted as a conspirator-party, and that the jury properly resolved the conflicting evidence in favor of the State. *Anderson*, 416 S.W.3d at 891; *Nava*, 379 S.W.3d at 406–07.

Appellant does not contend that a fact issue exists as to Delangel's asserted status as an accomplice to murder; instead, he contends that the record conclusively establishes such status and advocates only for a matter-of-law instruction in this appeal. An accomplice as a matter of law instruction is proper only if "there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law." *Blake v. State*, 971 S.W.2d at 454–55.

The evidence here does not clearly show that Delangel was an accomplice as a matter of law. This transaction involved a large quantity of narcotics worth at least $23,000. However, there is no evidence that Delangel and appellant had any prior relationship other than appellant's purchase of used cars. The record reflects that Delangel's only role in the conspiracy was to introduce appellant to Vargas through Guerrero. There is no evidence that Delangel had any prior or subsequent involvement in the drug trade or that any weapons were visible. The evidence also shows that Delangel ran away from the scene surprised, and afraid that appellant would find him

8

and kill him. Even if this record raised a fact issue as to whether Delangel was an accomplice to murder as a matter of fact, that is not the issue raised on appeal.

The trial court was not required, under the facts of this case, to submit a *sua sponte* instruction to the jury that Delangel was an accomplice as a matter of law. We overrule appellant's sole issue and affirm the judgment of the trial court.


      /s/  William J. Boyce
          Justice


Panel consists of Justices Boyce, Christopher, and Brown.

Do Not Publish — TEX. R. APP. P. 47.2(b).