**Opinion issued April 16, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-23-00239-CR**

————————————

**ELLIOT A. RICO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 19th District Court**
**McLennan County, Texas**[*]
**Trial Court Case No. 2021-876-C1**

---

**MEMORANDUM OPINION**

A jury convicted Elliot A. Rico of the offense of burglary of a habitation and

---

[*] Per the Texas Supreme Court's docket-equalization powers, this appeal was transferred from the Tenth Court of Appeals to this court on April 4, 2023. *See* TEX. GOV'T CODE § 73.001; Order Regarding Transfer of Cases from Courts of Appeals, Misc. Docket No. 23-9017 (Tex. Mar. 21, 2023). We are unaware of any conflict between its precedent and ours. *See* TEX. R. APP. P. 41.3.

assessed his punishment at 20 years of confinement plus a $2,500 fine. Rico appeals.

We affirm.

## BACKGROUND

A grand jury indicted Rico for burglary of a habitation, alleging that he intentionally and knowingly entered another's home without the effective consent of the owner and committed or tried to commit theft of the owner's clothing. As an enhancement allegation, the indictment also alleged that Rico was a convicted felon, having been convicted of possession of a controlled substance with intent to deliver.

Rico pleaded not guilty, and the parties then tried the case to a jury.

During its opening statement, the prosecution informed the jurors that they would hear evidence that Rico had been harassing Lindsay Daugherty, the person whose home he burglarized, before the burglary took place. As a result of the harassment, the prosecution said, Daugherty was too scared to be home alone.

The defense objected on the grounds that the alleged harassment was irrelevant to the charged offense and the prosecution's reference to it was inappropriate. In front of the jury, the prosecutor responded that this evidence "goes to the family violence" existing in the relationship between Rico and Daugherty. The prosecution's explanation then provoked another objection from the defense, which also asked that the jury be instructed to disregard and moved for a mistrial. The trial

2

court sustained the defense's objection and instructed the jury to disregard the comment about family violence. But the trial court denied the motion for mistrial.

Later during its opening statement, the prosecution twice referred to the "messy relationship" between Rico and Daugherty. The defense did not object to this characterization either time. Indeed, during its own opening statement, the defense agreed that Rico and Daugherty had "a messy relationship toward the end."

The first witness for the prosecution was R. Simons, who was a patrol officer with the Waco Police Department at the time of the burglary but has since retired. Simons was the first officer to respond to the dispatcher's report of the burglary. He responded to the scene—Daugherty's home—around noon the day of the report. His understanding was that Daugherty had not been at home the night of the burglary.

Simons testified that Daugherty told him Rico was the perpetrator. She told Simons she thought the point of entry was the garage door, and Simons said that the garage-door rollers at the bottom were missing when he examined the garage door. Inside the garage, the door to the house had a window that had been broken previously (before the date of the burglary), which Simons stated made it "easy to put your hand through to unlock the door" to get inside the house from the garage.

Daugherty showed him a fire pit on the back patio. The pit contained some remnants of burned clothes. The clothes had been inside the home. According to Simons, Daugherty was upset because most of her work clothes were destroyed.

Simons testified that Daugherty said "she was fearful of Rico." She also told Simons she had photographs on her phone that Rico sent to her the night before that showed "he had been inside the house, taking pictures of her clothes and such."

The next witness was A. Richardson, a detective with the City of Bellmead. At the time of the burglary, however, she was a crime scene technician in Waco. She was the one who collected and processed the evidence relating to the burglary.

Simons was already present when Richardson arrived at the scene. Richardson spoke with both Simons and Daugherty to ensure she understood the situation. Then Richardson photographed the scene, including the garage. It was Richardson's understanding that the rollers to the garage door had been removed some time before the date of the burglary, which made it possible to raise the door from the outside.

Like Simons, Richardson noted that the window of the door between the garage and the home was broken, which made it possible for someone taller than five foot to reach inside and unlock that door to gain entry to the home proper.

Richardson photographed the fire pit and surrounding area. There were "pieces of clothing" and "rubbery material" that appeared to be a boot sole. Daugherty told Richardson that boots that had been in the home were no longer there. And Richardson stated that there was a belt buckle among the charred remains.

Daugherty then took the stand. She testified that she contacted the police because when she returned home one day, she found her "clothes burned." She said

4

she arrived home sometime before noon that day. Without objection, Daugherty testified that she "wasn't staying the night there" because she "was afraid to be home alone." Instead, she spent nights at "different places," including the homes of relatives. But Daugherty clarified that she was referring to weekends on which the father of her children had custody. She would not stay there alone overnight on those weekends. When the children were with her, they all stayed overnight in the home.

Daugherty testified that Rico sent her text messages late the prior night, saying that he was going to burn her clothes. Rico's messages included a video of him setting her clothes on fire. She said that Rico was mad because he could not get to her and therefore destroyed her belongings instead. Daugherty knew the texts were from Rico because he sent them via Facebook. Rico's name and picture thus accompanied the messages, and she recognized his voice in the video. She stayed put that night, and she went home the next morning to see what Rico had done. When she returned, she confirmed that he burned her clothes just as he said he would.

The prosecution showed Daugherty pictures from Rico's Facebook profile, and Daugherty confirmed the profile belonged to Rico. Daugherty noted that Rico's picture was on there and that his nickname—"Monster"—was associated with it. She also testified that Rico was a tattoo artist, which was reflected in the profile too.

The prosecution then sought to introduce a series of abusive text messages Daugherty received from Rico. In these messages, Rico referred to Daugherty as "a

hard headed bitch" and "never happy hoe." Rico also accused her of being with other men. At one point, Rico wrote that she was not "here" and he was "burning all [of her] shit." One message was a photo of some article of clothing or clothes being set on fire. Daugherty said she knew these messages were from Rico because they came from his Facebook profile and were written in the way that he spoke to her.

The defense objected to the admission of these text messages, stating that the prosecution had not laid a proper foundation for their admissibility, the text messages did not show when or on what date they had been sent or received, and the messages consisted of hearsay. The trial court overruled these objections.

When the burglary occurred, Daugherty and Rico were no longer romantically involved with one another. But previously they were in a "boyfriend–girlfriend" relationship. Their relationship had lasted a little more than two years, ending toward the end of 2019. Daugherty said Rico "was more violent around that time," which elicited an objection, request for an instruction to disregard, and request for a mistrial from the defense. The trial court overruled the defense's objection and requests.

Daugherty testified that she ended the relationship. She indicated that Rico resided with her at some point during the relationship, but he was no longer doing so when he burned her clothes. After their relationship ended, Daugherty did not allow Rico to stay, and he was no longer allowed to enter her home without her consent. Daugherty's name was on the lease. Rico's name was not on the lease.

Without objection, Daugherty testified that she felt she had to contact the police because she "was getting scared at this point." He "was taking things pretty far." Rico was "still entering the home," and she "didn't feel safe there anymore."

On cross-examination, Daugherty acknowledged that she did not call the police when she received Rico's texts. She explained that she "wanted to be sure he really did what he said he was doing" before she involved law enforcement.

R. Flores, an officer with the Waco Police Department, testified next. He stated that he issued a criminal trespass warning to Rico regarding Daugherty's home before the events that led to this prosecution. He did so at Daugherty's request.

Afterward, the State rested, and the defense called Lizbeth Robles. Robles testified that Rico resided with her in Dallas when the burglary took place. During her testimony, the defense introduced several photos Robles took of herself and Rico. One of these photos was taken just before 9:00 p.m. the night of the burglary. Robles testified that she took this photo in Lancaster, Texas, outside of Dallas. According to Robles, Rico was with her during this entire period of time. But she agreed she never told law enforcement this was the case after Rico was indicted.

The defense then rested, and the trial court and parties discussed the jury charge. The trial court asked whether either side had objections to the court's charge, and both the prosecution and defense stated that they did not. The trial court then observed: "So off the record, you had made a request that your client wanted a lesser

7

included of criminal trespass of a habitation. Under the law, it is not a lesser included under the facts of this case." There was no further discussion about the charge.

The jury found Rico guilty of the offense of burglary of a habitation, and it then heard evidence relevant to punishment. Among other evidence, the jury was presented with evidence that Rico had several prior convictions, including a 2008 conviction for driving while intoxicated, a 2009 conviction for possession of a controlled substance with the intent to deliver, a 2009 conviction for evading arrest or detention, a 2009 conviction for escape, a 2016 conviction for evading arrest or detention with a prior conviction, a 2017 conviction for driving without a valid license, a 2021 conviction for possession of a dangerous drug, and a 2021 conviction for unlawfully carrying a weapon. Daugherty also testified that Rico was violent during their relationship, testifying that he gave her "two or three black eyes." The prosecution introduced into evidence two photographs of one these black eyes. She testified that she did not contact the police at the time because Rico was on parole. When this happened, she loved him and did not want to get him into trouble.

Rico's mother also testified during the punishment phase of trial. She explained that Rico's nickname—"Monster"—stemmed from when he was a baby or child, as he would "get mad and he would do like the Incredible Hulk face."

The jury assessed Rico's punishment at 20 years in prison and a $2,500 fine.

Rico appeals.

**DISCUSSION**

## I. Legal Sufficiency

Rico contends the evidence is legally insufficient to prove that he in particular entered Daugherty's home because the evidence of entry solely consists of her testimony that he did so, though she was not at home when the alleged burglary took place, and inadmissible Facebook messages. In addition, even if the evidence is legally sufficient to prove entry, Rico further contends that the evidence is legally insufficient to prove that his entry was made without Daugherty's effective consent. Finally, Rico contends the evidence is legally insufficient to prove that he committed the offense of theft. In particular, he disputes the intent element required for theft.

### A. Standard of review

In reviewing a jury's verdict for evidentiary sufficiency, we must uphold its verdict if any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). The jury's verdict is irrational under this standard only if it is based on evidence that is not legally sufficient to support a conviction. *Id.* at 655–56; *see Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016) (stating appellate court's role is not to act as thirteenth juror but rather is confined to ensuring jury's verdict is rational one that is based on more than mere modicum of evidence).

In a legal-sufficiency review, we consider all the evidence and view it in the light most favorable to the verdict. *Harrell v. State*, 620 S.W.3d 910, 913–14 (Tex. Crim. App. 2021); *see also Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (noting that legal-sufficiency review encompasses properly and improperly admitted evidence). This standard recognizes it is the jury's prerogative to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Harrell*, 620 S.W.3d at 914. So, we must defer to the jury's evaluation of the credibility of the witnesses and the weight to be given to various evidence. *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021).

An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). The jury may draw inferences from the evidence so long as the evidence supports each inference. *Carter v. State*, 620 S.W.3d 147, 150 (Tex. Crim. App. 2021). When the evidence supports reasonable but conflicting inferences, we presume the jury resolved the conflict in favor of its verdict, and we defer to the jury's resolution of the conflicting inferences. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). However, the jury's verdict cannot rest on conjecture or speculation, which are mere theorizing or guessing about the possible meaning of the facts and evidence presented, as opposed to reasonable inferences that can be drawn from the evidence admitted at trial. *Anderson*, 416 S.W.3d at 888.

Each fact need not point directly and independently to guilt, so long as the cumulative force of all the incriminating circumstances suffices to support the jury's verdict. *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020). Thus, in our review, we must not use a divide-and-conquer strategy, evaluating individual bits of evidence in isolation, because this approach does not consider the cumulative force of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Nor does the evidence need to negate every conceivable alternative to the defendant's guilt to be sufficient. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022).

The law does not require a particular type of evidence. *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). Direct and circumstantial evidence are equally probative. *Id.* Circumstantial evidence alone can be legally sufficient. *Id.* We apply the same standard of review with respect to both direct and circumstantial evidence. *Hammack v. State*, 622 S.W.3d 910, 915 (Tex. Crim. App. 2021).

**B.     Applicable law**

As alleged in the indictment, a person commits the offense of burglary of a habitation if he enters a habitation without the effective consent of the owner and commits or attempts to commit theft. TEX. PENAL CODE § 30.02(a)(3). Theft, in turn, consists of the unlawful appropriation of property with the intent to deprive the owner of the property. *Id.* § 31.03(a). An appropriation of property, which includes the acquisition of or exercise of control over property other than real property, is

11

unlawful if it is done without the owner's effective consent. *Id.* §§ 31.01(4)(B), 31.03(b)(1). In this context, the term "deprive" includes disposing of the property in a manner that makes its recovery by the owner unlikely. *Id.* § 31.01(2)(C).

### C.  Analysis

Daugherty testified that Rico did not have permission to be in her home, he messaged her telling her that he was going to burn her clothes while she was away from home overnight, her clothes were located inside her home, she discovered items of her clothing were missing from the home when she returned the following day, and she additionally found remnants of burned clothing in a fire pit outside of her home. The prosecution introduced the threatening message and many others into evidence, and Daugherty identified them on the stand. Simons, the responding officer, and Richardson, the crime scene technician, both provided testimony that corroborated Daugherty's testimony about the burning of her clothes. Photographs of the scene taken by Richardson, some of which show the remnants of burnt clothing in and around the fire pit, were introduced into evidence as well. From this evidence, a rational jury could reasonably find that Rico entered Daugherty's residence without her effective consent, unlawfully appropriated her clothing, and did so with the intent to deprive her of the clothing by destroying it with fire. *See Franklin v. State*, 606 S.W.2d 818, 821 (Tex. Crim. App. 1978) (holding jury could reasonably conclude defendant had obtained victim's property without her effective

12

consent and with intent to deprive her of property, even though evidence showed defendant had discarded property in trash and partially burned it to destroy it).

Rico disputes the authenticity and admissibility of the messages. But we consider all the evidence admitted at trial, whether or not it should have been admitted, when evaluating its legal sufficiency. *Balderas*, 517 S.W.3d at 766.

Robles gave Rico an alibi for the night in question, which she supported with photographs of her own. Faced with this evidentiary conflict, the jury had to weigh the evidence and the credibility of the witnesses. The jury did so, and we cannot invade the province of the jury by reweighing the evidence and credibility of the witnesses on appeal. *Martin*, 635 S.W.3d at 679; *Harrell*, 620 S.W.3d at 914.

Finally, to the extent Rico disputes the evidence is sufficient to show he intended to commit theft, intent generally is an issue for the jury to resolve based on its assessment of the surrounding circumstances. *Moreno v. State*, 702 S.W.2d 636, 641 (Tex. Crim. App. 1986). The jury heard evidence that Rico removed clothes from Daugherty's home without her consent and destroyed at least some of them, so that Daugherty could never recover these clothes as a practical matter. This evidence suffices to show Rico intended to commit theft. *Franklin*, 606 S.W.2d at 821.

We overrule Rico's first issue.

## II. Admissibility of Evidence

Rico contends the trial court erred in admitting into evidence the Facebook messages he allegedly authored the night of the burglary due to lack of authentication because the messages lack a date or time-stamp as to when they were sent.

### A. Standard of review

We review a trial court's evidentiary rulings, including rulings regarding whether the proponent of evidence has supplied facts sufficient to support a reasonable jury determination that the evidence is authentic, for an abuse of discretion. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015).

### B. Applicable law

In general, the proponent of an item of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Examples of evidence that satisfy this authentication requirement include testimony "that an item is what it is claimed to be." TEX. R. EVID. 901(b)(1).

This authentication requirement is not a demanding one. *See Butler*, 459 S.W.3d at 600 (describing rule as liberally providing for admissibility). Ultimately, it is for the jury to decide whether an item of evidence is what its proponent claims. *Id.* The trial court must merely ensure the proponent has supplied enough facts to support a reasonable jury determination that the item of evidence is authentic. *Id.*

## C.   Analysis

Daugherty testified that the messages originated from Rico's Facebook profile, and she supplied various details in support—including their use of Rico's name and his nickname, "Monster"; inclusion of a photograph of Rico; and reference to tattooing, which is Rico's profession. Daugherty also testified that the messages were written in the way Rico typically speaks and writes and that she recognized his voice in the video message he sent. Taken together, this testimony suffices to support the trial court's implicit finding that a jury could reasonably find the messages to be authentic. TEX. R. EVID. 901(b)(1); *see also* TEX. R. EVID. 901(b)(4), (b)(5) (providing that authentication may be shown by "appearance, contents, substance, internal patterns, or other distinctive characteristics" as well as witness's "opinion identifying a person's voice"); *see, e.g.*, *Butler*, 459 S.W.3d at 603 (holding evidence of authenticity sufficient because complainant, who had been in romantic relationship with defendant, testified that text messages she received came from number he had called her from in past, content of text messages convinced her that he was sender, and he called her during exchange of text messages at issue).

Rico's specific complaint on appeal concerns the date and time when he sent these messages. That is, he appears to contend it is possible that he sent them on some other occasion and that they therefore cannot support a finding that he entered Daugherty's home on the night in question and stole and burned her clothing. As

15

framed, this is not a complaint about the authenticity of the evidence so much as its relevance—the propensity of the evidence to make his guilt more or less likely. *See* TEX. R. EVID. 401 (providing evidence is relevant if it tends to make fact more or less probable than it otherwise would be and fact is consequential in deciding case).

In any event, assuming that information concerning the date and time of a Facebook message or similar electronic communication could bear on its authenticity, Daugherty testified that she received the messages at issue during the night before she returned to her home and found that her clothes were burned. Her testimony, standing alone, is sufficient evidence of the date and time of receipt, particularly given that there is no evidence suggesting a different date or time. *See* TEX. R. EVID. 901(b)(1) (providing witness testimony can show authenticity).

We overrule Rico's second issue.

## III. Motions for Mistrial

Rico contends the trial court erred in denying his motions for mistrial, which were premised on repeated references during the guilt–innocence phase of trial to domestic violence against Daugherty committed by Rico. Rico maintains these incurable references were so inflammatory that they deprived him of a fair trial.

### A. Standard of review

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Thus, we

16

must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

### B.    Applicable law

A mistrial is required only under extreme circumstances, when the prejudice is incurable. *Id.* An inquiry into incurability essentially resembles appellate review for harm *Id.* at 700. But we look specifically to three factors: the severity of misconduct, measures adopted to cure the misconduct, and the certainty of the conviction in the absence of the misconduct. *Id.* Accordingly, whether there has been misconduct at all is therefore a threshold issue in evaluating incurability. *See id.*

### C.    Analysis

Rico essentially contends the prosecution's references to and use of evidence concerning domestic violence were improper because this subject matter is irrelevant to the offense of burglary or because any probative value evidence of domestic violence has is substantially outweighed by the danger of unfair prejudice.

We do not agree that the tumultuous nature of Rico's and Daugherty's relationship, including any corresponding physical abuse, was irrelevant. This burglary is atypical in that the apparent motive was not material gain. Instead, Rico's alleged motive—substantiated by evidence admitted during trial—was to inflict harm on Daugherty or to punish her for seeing other men. Daugherty eventually testified that Rico was mad because he could not get to her personally and he

17

therefore destroyed her belongings instead. Evidence of his propensity to inflict harm on her or to punish her for purported misdeeds therefore tends to explain his motive for entering her home and taking her clothes without her effective consent only to burn the clothes afterward, and evidence of an extraneous offense that sheds light on a defendant's motive to commit the charged offense is generally admissible. *See Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982) (observing that evidence of other crimes is admissible to show motive to commit charged offense).

Nor do we agree that the probative value of any reference to physical abuse whatsoever was substantially outweighed by the danger of unfair prejudice. Evidence of motive is highly relevant, so much so that the prosecution may virtually always introduce evidence explaining a defendant's motive. *Colone v. State*, 573 S.W.3d 249, 267 (Tex. Crim. App. 2019). Thus, the ostensible prejudice associated with evidence of motive must be quite significant to substantially outweigh its probative value to the degree necessary to render it inadmissible under the rules.

Here, this highly probative motive-related evidence is not especially prejudicial. The references to domestic violence were minimal during the guilt–innocence phase of trial. The prosecution made a fleeting reference to "family violence" during its opening, but both sides subsequently referred to Rico and Daugherty's "messy relationship" in their openings. Daugherty later testified, over objection, that Rico became "more violent" toward the end of their relationship.

18

Otherwise, the evidence on this subject generally concerned Daugherty's ongoing fear of Rico, which did not draw an objection from the defense on any ground.

Accordingly, as a threshold matter, we do not agree that the record shows misconduct. Thus, the trial court did not err in denying the motions for mistrial.

Moreover, assuming for argument's sake that the references to domestic violence could constitute misconduct, the trial court still did not err in denying the motions for mistrial. Because the references to physical abuse were brief and lacking in detail, they were not particularly inflammatory in nature and any prejudice was therefore minimal. And, given the very limited nature of these references, there is little or no reason to believe that the jury found Rico guilty of the charged offense based on these references, rather than the evidence of the burglary itself, which included Facebook messages in which Rico indicated he was in Daugherty's home and intended to burn her possessions as well as a video of clothing being set alight that Daugherty said included Rico's voice. Viewing the record as a whole, this is not the kind of exceptional case in which extreme circumstances required a mistrial.

We overrule Rico's third issue.

## IV. Lesser-Included Offense

Rico contends the trial court erred in not instructing the jury on the offense of criminal trespass because it is a lesser-included offense of burglary of a habitation.

However, the record shows that Rico did not preserve this error for review.

### A.    Error preservation

A trial court does not have an independent duty to instruct the jury about a lesser-included offense in the absence of a request for an instruction. *Williams v. State*, 662 S.W.3d 452, 455 (Tex. Crim. App. 2021). Like defensive instructions, instructions about lesser-included offenses implicate trial strategy. *Id.* Therefore, a defendant can only complain on appeal of the trial court's failure to include an instruction about a lesser-included offense if he requests it at trial. *Id.* at 455–56.

Further, for a defendant to preserve this kind of error for appellate review, it is necessary but not sufficient that he request an instruction about a particular lesser-included offense in the trial court. *Id.* at 462. The defendant also "must point to evidence in the record that raises the lesser-included offense." *Id.* at 461. He must identify this evidence with some degree of specificity. *See id.* at 462 (stating that "if a defendant requests a particular lesser-included instruction and he sets out, on the record, the specific evidence that supports a rational basis for rejecting the greater offense but supporting the lesser offense, the trial judge errs if he refuses to instruct the jury on that lesser offense"). Without this factual specificity, any error as to the failure to include the instruction is not preserved for our review, unless the specific evidence raising the lesser-included offense "is manifest" in context. *Id.*

**B.    Analysis**

On the record, the defense stated it had no objection to the trial court's jury charge. After the defense did so, the trial court noted that the defense had requested an instruction on the lesser-included offense of criminal trespass off the record, and the trial court stated that the requested instruction was not warranted because criminal trespass was "not a lesser included under the facts of this case." But during the on-the-record discussion, the defense did not identify what specific evidence, if any, the jury heard that entitled Rico to a lesser-included offense instruction. Nor was the evidence on which the defense relied manifest in the surrounding context. So, Rico did not preserve this issue for review. *Williams*, 662 S.W.3d at 461–62.

Moreover, even if this issue had been preserved, a defendant is entitled to an instruction on a lesser-included offense only when some evidence in the record suggests the possibility that if the defendant is guilty, he is guilty only of the lesser-included offense. *Moreno*, 702 S.W.2d at 640. On appeal, Rico does not identify any evidence of this sort. Instead, in his brief, Rico reasons that there was "no testimony" on certain topics and asserts a jury could conclude from the absence of this evidence that he lacked the intent necessary to commit the theft required for burglary.

As an initial matter, Rico's characterization of the record is not accurate. He asserts there "was no testimony that anything was taken from the house." But Officer Simons testified that Daugherty told him there were items missing from her home,

21

though he did not "know what she had missing" and said she "didn't know exactly," apart from "some shoes" and "some scrubs" that were gone. Similarly, Richardson, the crime scene technician, testified that Daugherty told her "there were some boots missing," two pairs of boots to be precise. Finally, Daugherty testified that Simons asked her to write a list of the items that were missing from her home. Daugherty said that to make this list, she "could just go off of what was missing in the closet, which was pretty much everything that [she] had in [her] closet." Thus, contrary to Rico's assertion, evidence exists that items were taken from Daugherty's home.

Daugherty gave additional testimony connecting some, if not all, of her missing items of clothing to the burned remnants of clothing found in the fire pit:

Q. Okay. And you believe what clothing items you had were in that fire pit destroyed; is that correct?

A. Yes.

Daugherty believed this to be the case because she "saw [her] clothes in there burned." Officer Simons likewise testified that Daugherty showed him a fire pit in which "clothes had been burned." Simons further testified that he thought Daugherty had informed him that these burned clothes had come from "just inside the residence." He could tell for himself that there had been some destruction of personal property. Simons stated that when a fire marshal went through the pit in his presence, "they were able to determine that some of the clothing" possibly was "scrubs and shoes." When Richardson testified, she likewise testified about the burned clothing

22

and an item that looked like the remains of boot sole, which Richardson photographed.

Because the record is not at all as Rico portrays it, his argument about the lesser-included offense would fail even if he had preserved this issue. Further, Rico's defense at trial—presented through Robles's alibi testimony—was that he was not in Daugherty's home on the night of the burglary, not that he was there but for a purpose other than committing theft. The record contains no evidence from which a reasonable jury could find that, if guilty, Rico was only guilty of criminal trespass.

We overrule Rico's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).