# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00568-CR

**William Everette Razor, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 70857, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant William Everette Razor guilty of the offense of robbery. *See* Tex. Penal Code § 29.02. The trial court rendered judgment in accordance with the jury's verdict. On appeal, appellant challenges the sufficiency of the evidence to support the jury's verdict. Because we conclude that the evidence was sufficient, we affirm the judgment of conviction.

## BACKGROUND

Around 1:30 a.m. on May 25, 2012, Carolyn Taylor, who was a prostitute, was walking the streets in Killeen. A black man driving a Chrysler 300 picked her up, and they agreed that he would pay her $15 in exchange for sexual intercourse. He paid her the money, and she placed it in her bra. They drove to an alley behind a building and had sexual intercourse inside the car. The alley was between the building and a tall, wooden "privacy fence." It was dark, and no one else was in the alley. After they had sexual intercourse, they both got out of the car to urinate.

Taylor urinated facing the "windshield at the back of the car." The man "was behind [her] close to the building." As she straightened up, she was knocked out from behind. When she regained consciousness, she was lying face down and bleeding from the back of her head. She no longer had her purse, shoes, or the money she had placed in her bra that the man had paid her, but she had her cell phone, which was on the other side of her undergarment from where she had placed the money. She walked out of the alley and called 911 from her cell phone.

The police located Taylor around 5:00 a.m. about one and one-half blocks away from the alley "sitting on the curb very distraught and covered in blood." According to the officer who found her, she had been struck "towards the back area of the head" with "a blunt object." Based on information provided by Taylor, the police located the alley where they found blood on the ground, hand prints in the blood, and a hearing aid that belonged to Taylor. Taylor was taken to a hospital by ambulance and treated for her head injury—"about a 1.5 centimeter gash on the back of her head" that was still bleeding. A nurse also did a sexual assault examination on Taylor and obtained samples from her for DNA testing.

The jury trial occurred in July 2013. The State's witnesses included Taylor, police officers and detectives who investigated the incident, and forensic scientists who worked in the Texas Department of Public Safety crime laboratory and tested the DNA evidence. During her testimony, Taylor identified appellant as the man who assaulted her. She had been unable to identify him from photo arrays a few weeks after the incident, but she testified that he had engaged her services one other time about 30 days before the date of the incident. The exhibits included photographs of Taylor sitting on the curb where the police initially found her, more photographs

2

of her at the hospital, photographs of the alley and the blood on the ground in the alley, the sexual assault examination report, and the DNA laboratory report. The DNA testing compared appellant's DNA profile and those taken of sperm fractions from Taylor's vaginal swab. The DNA laboratory report concluded that appellant could not be excluded as the contributor of the single source DNA profile from the sperm fraction of the vaginal swab.[1]

The jury found appellant guilty of the offense of robbery and assessed his punishment at confinement for a term of five years. *See* Tex. Penal Code § 29.02(b) (second degree felony); *see id.* § 12.33 (setting punishment range for second degree felony). The trial court rendered judgment on the jury's verdict, and this appeal followed.

## DISCUSSION

In three issues, appellant contends that the evidence was insufficient to support the jury's findings that (i) appellant committed theft of Taylor's property, (ii) appellant intended to obtain or maintain control of Taylor's property, and (iii) appellant intentionally, knowingly, or recklessly caused bodily injury to Taylor. Appellant's issues challenge the sufficiency of the evidence to prove the offense of robbery, *see id.* § 29.02, and focus on an alleged lack of evidence concerning the robber's identity.

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, any rational fact-finder could have found the

---

[1] Probability of a random match in this case was 1 in 718.9 sextillion for black males.

3

essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). "It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

For purposes of this appeal, a person commits the offense of robbery "if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code § 29.02(a)(1); *see id*. § 1.07(8) (defining "bodily injury" as "physical pain, illness, or any impairment of physical condition"). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id*. § 29.01(1). A person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). "Appropriation of property is unlawful if . . . it is without the owner's effective consent." *Id*. § 31.03(b)(1).

The jury may infer the requisite intent to obtain control of a victim's property from the conduct of the defendant. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *see Benitez v. State*, No. 05-13-00199-CR, 2014 Tex. App. LEXIS 7651, at *8–9 (Tex. App.—Dallas July 15, 2014, pet. ref'd) (not designated for publication). "The general rule is still that a theft occurring immediately after an assault will support an inference that the assault was intended to

4

facilitate the theft." *Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002); *see Sorrells v. State*, 343 S.W.3d 152, 157–58 (Tex. Crim. App. 2011) (discussing *Cooper* and required nexus between assault and theft to prove robbery); *Benitez*, 2014 Tex. App. LEXIS 7651, at *8 (noting "intent to commit theft can be formed either before or during the assault" to support conviction for robbery).

Appellant concedes that evidence at trial showed that he and Taylor "participated in a consensual sexual liaison" and that, sometime after that, "Taylor suffered a head injury of some kind from an unknown source and/or assailant." But, aside from those facts, appellant urges that his conviction for robbery rests on conjecture and "stacking of supposition upon supposition." Appellant focuses on Taylor's testimony that she "didn't see nothing coming" and "didn't even feel getting hit" to support his position that she was unable to identify her assailant. Appellant also focuses on (i) inconsistencies in Taylor's testimony at trial with prior accounts of what happened, including her description of the assailant, (ii) the time period that Taylor was unconscious, and (iii) her inability to identify appellant in several photo arrays that the police showed her a few weeks after the incident. According to appellant, Taylor's "memory of what occurred in that area was spotty at best" and whether appellant "was even present when she suffered her injury is largely conjectural."

Taylor, however, identified appellant at trial as the man who assaulted her and further testified that (i) his car was a Chrysler 300, (ii) appellant paid her money that she "put in [her] bra," (iii) no one else was in the alley when they were there, (iv) appellant was behind her at the time that she was struck in the back of the head, and (v) when she regained consciousness

5

several hours later, she was lying face down and bleeding, and appellant and his car and her purse, shoes, and money were gone. The jury could have found this testimony credible. *See Jackson*, 443 U.S. at 319; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (noting that "jury is the sole judge of credibility and weight to be attached to the testimony of witnesses").

Taylor's testimony about the incident also was consistent with other evidence, including the photographs of Taylor and the alley. The photographs of the alley show a dark and isolated alley, and the photographs of Taylor show her head injury and the resulting bleeding. One of the officers testified that he personally saw appellant driving a Chrysler 300 in June 2012, and one of the detectives testified that appellant told him that he drove a Chrysler 300. Another officer testified that the police were able to locate the alley shortly after speaking with Taylor based on information that she provided. They found Taylor's hearing aid and blood on the ground, and hand prints in the blood on the ground were consistent with Taylor's testimony that she was lying face down when she regained consciousness. The DNA laboratory report also supported Taylor's testimony that she and appellant were in the alley to have sexual intercourse in exchange for appellant paying her money. *See Carrizales*, 414 S.W.3d at 742 (noting "circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt").

Based on this evidence, a rational jury could draw reasonable inferences that appellant observed Taylor place the money in her bra when he gave it to her and that he appropriated her property including the money in her bra after striking her from behind and rendering her unconscious. *See Merritt*, 368 S.W.3d at 525 (noting that courts "permit juries to

6

draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial").

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed theft of Taylor's property, that he intended to obtain or maintain control of Taylor's property, and that he intentionally, knowingly, or recklessly caused bodily injury to Taylor. *See Jackson*, 443 U.S. at 319; *Sorrells*, 343 S.W.3d at 157–58 (concluding evidence "sufficient to prove both that the appellant committed theft, and that he committed assault in the course of committing theft"); *Cooper*, 67 S.W.3d at 224. Thus, we conclude that the evidence was sufficient to support the jury's guilty verdict and overrule appellant's issues.

**CONCLUSION**

Having overruled appellant's issues, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed

Filed: June 17, 2015

Do Not Publish

7