**MODIFY and AFFIRM; and Opinion Filed October 27, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01138-CR

**GERRY LEE KING JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F13-25625-X**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Brown, and Schenck
Opinion by Justice Lang-Miers

Appellant, Gerry Lee King Jr., pleaded not guilty to aggravated assault with a deadly weapon. A jury found him guilty and assessed his punishment at five years' imprisonment. Appellant argues on appeal that the evidence is insufficient to support the conviction. In a cross-issue, the State argues that the judgment should be modified to include an affirmative finding of family violence. For the reasons that follow, we modify the judgment and affirm as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

At the time of the offense, appellant and the complainant were boyfriend/girlfriend and she was eight months pregnant with appellant's child. The complainant and her sister lived with their aunt in an apartment in Garland. On the Wednesday before Thanksgiving in 2013, the complainant invited appellant to come over and stay the night because her family was out of town. (The family did not allow appellant to stay at the apartment because he and the

complainant had a history of arguing and fighting.) When appellant came over, he saw the complainant's sister's Facebook page on a laptop computer in the kitchen and became angry that the sister was communicating with the complainant's ex-boyfriend. Appellant confronted the complainant about the Facebook posts. Appellant began to push and hit the complainant.

The complainant "knew [appellant] done had a couple of fights and arguments about [the ex-boyfriend] before. So I just – I knew what it was going to lead to . . . ."[1] She "grabbed a knife" from the kitchen with the intention of scaring appellant away. She said they had never used weapons before when they fought, but the thing that made this fight different was because she "was pregnant and so I was kind of trying to scare him away so he wouldn't hurt the baby." They fought over the knife, and appellant took the knife away from the complainant and "threatened to cut [her]." While appellant was holding the handle of the knife, the complainant "grabbed [the knife] by the blade [and] held it for a long time." Then, knowing that the complainant was holding the blade with her hand, appellant pulled the knife out of her hand, cutting her fingers and palm; she said it hurt. Appellant also poked the complainant's stomach with the knife, leaving a two-inch cut.[2]

The complainant saw a cell phone in the living room that her sister's friend had left and used it to dial 911. But she and appellant started fighting again and when the operator answered, the complainant did not respond and in the fight dropped the phone on the floor. The 911 operator dispatched the police to the apartment complex and recorded fifteen minutes of the argument. In the 911 recording, appellant and the complainant were yelling, cursing, and calling each other names. Appellant asked the complainant to give him all of her money, and she said

---

[1] The complainant testified that appellant and her ex-boyfriend "didn't get along. They had had a couple of fights and it wound up leading to murder." She clarified that appellant did not murder anyone.

[2] In the photographs, the cut is to the side of the complainant's stomach area. We will refer to "stomach" because that is the term used below.

she did not have any money. He threatened to cut her if she was lying and based on what the complainant was saying, it appears that appellant was searching her pockets.

Appellant and the complainant "moved around the house" and at one point were fighting in the complainant's bedroom and "tussling" over a clothes iron. The complainant said she "was just picking up stuff trying to get him away from me" and "he threatened and said he was going to hit me with the iron." She said she "grabbed it so he couldn't hit me with it" and as they fought over the iron, it accidentally hit her in the head. Appellant also put his hands around the complainant's neck and pinned her against a wall; she could not breathe. He did this about three or four times. All these incidents can be heard on the 911 recording.

The complainant ran to her aunt's bedroom where she locked the door and climbed out a window. She ran to the police car that was parked in the apartment complex parking lot. (The officers had been going door to door trying to determine who called 911.) The officers saw her and asked her if she was the one who called 911. She said yes. One of the officers described her as "out of breath . . . [and] very underdressed for the weather, very frantic." She showed them a cut on her hand, explained what happened, and took them to the apartment. The door to the apartment was locked and appellant did not respond to the officers' knocks. About that time, the complainant's sister arrived and unlocked the door for the police. The complainant and her sister gave the police consent to search the apartment. They found appellant hiding in a closet in a bedroom. He was arrested without incident.

The complainant's sister testified that the complainant was "crying hard" when she saw the complainant at the apartment. The sister saw marks on the complainant's neck and stomach and said they "looked like scratches."

After appellant's arrest, the complainant gave the police a written statement about what happened. She stated:

–3–

I had got on Facebook he seen messages on my sister page from my ex and got mad he grab my hands and twisted them and I went in the room. He came in 30 mins later and start pushing and hitting me. I ran to the kitchen and got the knife, he took it from me and then poke me in my stomach. I grab the knife he told me to let go before he cut my hand. I didn't let go and he intentionally cut my hand. I was trying to fight back then gave up as he repeatedly hit me and my head slap me and bang my head against the wall. He was choking me as well were I could not breath and I was really fearful for my life and my child cause I am 8 1/2 months preganant.

The complainant testified at trial that one of the police officers told her to write that she "was really fearful for my life." She said she "was really just trying to scare [appellant] with the knife. It wasn't because I was in fear." But she also testified that she was screaming at appellant during the entire fight telling him to leave her alone and to leave the house. When asked if she was scared, she said, "Yeah, sort of."

While appellant was in jail awaiting trial, he made several telephone calls to the complainant; the State played portions of those calls for the jury. In those calls, appellant told the complainant that she had to file an affidavit of non-prosecution so the State would drop the charges. He coached the complainant about what to say to the prosecutor and how to explain the "misconfusion" about the knife. He said he had "a plan" and that she could "at least" sign an affidavit of non-prosecution; he said she did not have any "black eyes or nothing." They also talked about how she was going to explain the cuts.

The complainant testified that she talked to a victim advocate about filing an affidavit of non-prosecution, but she said she "didn't necessarily want to drop the charges[.]" Instead, she said she "just didn't want him to have aggravated assault with a deadly weapon." She said, "I just felt like it wasn't right for deadly weapon when I was the one who actually pulled both of them [sic] out." She also testified that she did not know she had been cut on her stomach until she was examined in the ambulance; she said she did not think appellant intentionally cut her stomach. On cross-examination, she testified that appellant never threatened her with the knife.

–4–

The trial court instructed the jury on aggravated assault with a deadly weapon as charged in the indictment, the lesser included offense of assault, and self-defense. The jury found appellant guilty as charged in the indictment.

In two issues, appellant contends that the evidence is insufficient to support a finding that he intentionally, knowingly, or recklessly cut the complainant with a knife and to support the jury's rejection of his claim of self-defense. He also contends that there is a "material and fatal variance between the indictment allegations and the proof at trial," and the jury was not rational.

**Applicable Law**

A person commits aggravated assault if the person commits assault and uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. *Id*. § 22.01(a)(1) (West Supp. 2014). "Bodily injury" includes physical pain. *Id*. § 1.07(8).

As charged in this case, aggravated assault is a result-oriented offense because the gravamen of the offense is bodily injury to the complainant. *See Landrian v. State*, 268 S.W.3d 532, 533 (Tex. Crim. App. 2008). A person acts "intentionally" with respect to a result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). A person acts "recklessly" with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id*. § 6.03(c).

When a defendant claims he acted in self-defense, the defendant has the burden of producing evidence to raise the defense, but the State has the burden of persuasion to disprove

–5–

the defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against another's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a). However, the use of force is not justified if the actor provoked the other's use or attempted use of unlawful force, unless the actor abandons the encounter and the other person nevertheless continues or attempts to use unlawful force against the actor. *Id.* § 9.31(b)(4).

## Standard of Review

When reviewing a challenge to the sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict and determine whether any rational jury could have found the essential elements of the offense and against the appellant on his claim of self-defense beyond a reasonable doubt. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013); *Harrod v. State*, 203 S.W.3d 622, 627 (Tex. App.—Dallas 2006, no pet.). A jury's verdict of guilty is an implicit rejection of the claim of self-defense. *Harrod*, 203 S.W.3d at 627. We must bear in mind that the jury heard the evidence and observed the demeanor of the witnesses, and we give deference to the jury to determine the credibility of the evidence, to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

## Discussion

Appellant argues that "no rational trier of fact could have concluded that [he] *intentionally, knowingly, and recklessly* caused bodily injury to [the complainant] by cutting . . . [her] with a knife because [he] did not have the necessary mens rea to bring about any harm to [her] with a knife." Conversely, he contends that he was justified in using non-deadly force against the complainant and that all he did "was take away a knife that was picked up by [the

–6–

complainant] who wanted to '..scare him away.'" He contends that he was "trying to defend himself and prevent [the complainant] from hurting herself [and] did nothing wrong by trying to take the knife and the iron away from [her]." He denies that he threatened the complainant with the knife, and he contends that the complainant was the one who committed aggravated assault with a deadly weapon and he did not provoke her use of the knife. He also contends that there is a material and fatal variance between the indictment allegations and the proof at trial.

Generally a material and fatal variance occurs when the State proves the defendant guilty of a crime in a manner that varies from the allegations in the indictment. *See Gollihar v. State*, 46 S.W.3d 243, 246–47 (Tex. Crim. App. 2001). We do not need to address appellant's first variance argument because the State abandoned the allegation about which he complains—that he used his hands as a deadly weapon.

The evidence showed that appellant started the argument over a Facebook page. He confronted the complainant and began to push and hit her. The complainant said she grabbed a knife because she was pregnant and did not want appellant to hurt the baby. She also said she knew appellant had a history of fighting over her ex-boyfriend and what those fights could "lead to." After appellant took the knife away from the complainant, he intentionally cut her hand and poked her in the stomach with the knife. She had cuts on her hand and stomach. Additionally, the jury heard appellant and the complainant fighting on the 911 recording and heard the calls from jail.

The complainant's testimony about how the argument started and why she grabbed the knife, the words spoken by appellant and the tone of the voices on the 911 recording, and the jail calls support a reasonable inference that appellant was the aggressor. His conduct caused the complainant to fear for the safety of her unborn child, and she grabbed a knife to protect herself and her child. The evidence also supports the reasonable inferences that appellant used the knife

–7–

to intentionally cut the complainant's hand and that he knowingly or recklessly poked her in the stomach with the knife.

Although the evidence presented conflicting inferences, we presume the jury resolved the conflicts in favor of the State, and there is evidence to support the jury's resolution of the conflicts. *See Anderson*, 416 S.W.3d at 888 ("When the record supports conflicting inferences, the reviewing court presumes that the trier of fact resolved the conflicts in favor of the State and defers to that determination.") We conclude that any rational jury could have found the elements of the offense and rejected appellant's claim of self-defense beyond a reasonable doubt. And based on this conclusion, we also reject appellant's argument that the jury was "not rational" when it reached a guilty verdict.

Appellant also argues that the State did not prove the knife was a deadly weapon. He contends that "[b]ecause the knife did not cause serious bodily injury or death, to qualify as a deadly weapon, the State must have proven that [he] '…intend[ed] a use of the [knife] in which it would be capable of causing serious bodily injury.'" And he argues that he "has already exhaustively shown above that he did not intentionally, knowingly, or recklessly cause serious bodily injury . . . ." Appellant also argues that there is a material and fatal variance between the indictment allegation and the proof at trial. Again, we disagree.

The State is not required to prove "that the actor actually intend[ed] death or serious bodily injury. . . ." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The question is whether the knife is an instrument that "in the manner of its use or intended use is capable of causing death or serious bodily injury," TEX. PENAL CODE ANN. § 1.07(a)(17)(B), and whether the knife "was 'used' *in facilitating* the underlying crime," *McCain*, 22 S.W.3d at 503.

Appellant does not dispute that the knife was capable of causing death or serious bodily injury. And the evidence showed that appellant took the knife away from the complainant during

their argument and then threatened her with it, intentionally cut her hand, and poked her in the stomach causing a two-inch cut.

We conclude that the evidence was sufficient for the jury to conclude that the knife in its use or intended use was capable of causing death or serious bodily injury and that the knife facilitated appellant's assault of the complainant. *See id.*; *see also Plummer v. State*, 410 S.W.3d 855, 864–65 (Tex. Crim. App. 2013). Consequently, the evidence was sufficient to prove the knife in this case was a deadly weapon. *See McCain*, 22 S.W.3d at 503.

And with regard to the variance issue, appellant does not argue that the State's proof of a deadly weapon varied from the allegation in the indictment, nor could he. The State alleged in the indictment that appellant used or exhibited a knife as a deadly weapon, and that is what the evidence proved. Instead, appellant contends that the State "failed to prove any method at all." We do not construe this argument as a material variance issue. *See Gollihar*, 46 S.W.3d at 246–47.

We resolve appellant's two issues against him.

### STATE'S CROSS-ISSUE

The State argues that we should modify the judgment to include a finding of family violence. We agree.

Article 42.013 of the Code of Criminal Procedure provides that in the trial of an offense under Penal Code Title 5, "Offenses Against the Person," which includes aggravated assault, "if the court determines that the offense involved family violence, as defined by Section 71.004 of the Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." TEX. CODE CRIM. PROC. ANN. art. 42.013 (West 2006); TEX. PENAL CODE ANN. § 22.02.

Section 71.004 of the Family Code defines "family violence" to include "dating violence, as that term is defined by Section 71.0021." TEX. FAM. CODE ANN. § 71.004(3) (West 2014). Section 71.0021 in turn defines "dating violence" as "an act, other than a defensive measure to protect oneself, by an actor that: (1) is committed against a victim: (A) with whom the actor has or has had a dating relationship . . . and (2) is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim in fear of imminent physical harm, bodily injury, assault, or sexual assault." *Id.* § 71.0021(a)(1)(A), (2).

The indictment in this case alleged that appellant committed aggravated assault with a deadly weapon and that appellant "has and has had a dating relationship with the same complainant and . . . was a member of the complainant's family and household . . . ." The testimony showed that appellant and the complainant were involved in a dating relationship at the time of the offense and the complainant was eight months pregnant with appellant's child. The jury found appellant guilty "as charged in the indictment."

On this record, we conclude that the trial court was statutorily obligated to include an affirmative finding of family violence in its judgment. *See* TEX. CODE CRIM. PROC. ANN. art. 42.013; *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (citing *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd)); *Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006). We have the power to modify a judgment to make the record speak the truth when we have the necessary information before us to do so. *See* TEX. R. APP. P. 43.2(b); *French*, 830 S.W.2d at 609. Accordingly, we modify the trial court's judgment to include an affirmative finding of family violence.

## CONCLUSION

We modify the trial court's judgment to include an affirmative finding of family violence and affirm the judgment as modified.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do not publish
TEX. R. APP. P. 47.2(b)

141138F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GERRY LEE KING JR., Appellant

No. 05-14-01138-CR　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F13-25625-X.
Opinion delivered by Justice Lang-Miers.
Justices Brown and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to include an affirmative finding of family violence pursuant to Texas Code of Criminal Procedure Article 42.013.  As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 27th day of October, 2015.