

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00761-CR

Jeffery John **ROMERO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 17-1680-CR-B
Honorable Gary L. Steel, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: November 6, 2019

AFFIRMED

Jeffery John Romero was convicted by a jury of possession of methamphetamine with intent to deliver. On appeal, Romero contends the trial court erred in admitting statements he made on a video recording and photographs of his tattoos. Romero also contends the evidence is insufficient to support his conviction. We affirm the trial court's judgment.

## BACKGROUND

Detective Jamie Diaz testified he was contacted by a confidential informant ("CI") who informed him Romero was talking about selling drugs to the CI. Detective Diaz testified he

arranged for the CI to purchase methamphetamine from Romero by providing him with $140 for the purchase and equipping him with two recording devices. Detective Diaz testified he searched the CI's person and truck, and the only money in the CI's possession was the money Detective Diaz provided to him. The CI testified Detective Diaz provided him with $80 or $90, a scale, and the two recording devices. One device was a pair of sunglasses containing recording equipment, and the other device was a key fob containing recording equipment. The recording devices were activated, and the video recordings from the devices were admitted into evidence.[1]

In Detective Diaz's presence, the CI called Romero who told the CI to come to his residence. The CI drove away, and Detective Diaz and a surveillance team kept the CI's truck under constant surveillance.

After the CI arrived at Romero's residence, Romero told the CI they had to go to another location to pick up the methamphetamine. The CI testified he was surprised because the methamphetamine was supposed to be at Romero's residence, but he testified Romero offered to help him buy the methamphetamine. The CI referred to the methamphetamine he was supposed to purchase as an "eightball" which contains 3.5 grams of methamphetamine.

Romero and the CI drove to another location. On the way to the other location, the CI stopped at a convenience store and gave Romero some money to make purchases. While Romero was inside the store, the CI spoke with Detective Diaz to inform him they were going to pick up the methamphetamine from another location. Upon arriving at the other location, the CI and Romero picked up a third individual identified only as Mr. Decker. The CI testified it was Romero's idea to locate Decker. The three men then drove to a hotel where Decker had arranged to meet a fourth person who would sell them the methamphetamine.

---

[1] The video recording from the sunglasses cut off after almost six minutes, but the key fob device recorded the entire transaction.

At some point, the CI handed the money to purchase the methamphetamine to Romero who later handed the money to Decker. On the video recording, Romero is heard questioning the CI about the amount of the money. Eventually, Decker went inside the hotel and returned with methamphetamine which the evidence established he purchased from Amanda Carrillo. The CI testified Romero took possession of the methamphetamine, weighed it, and discovered a shortage in its weight. The CI testified Romero was angry about the shortage and demanded that Decker contact Carrillo. The CI testified they returned to the hotel, and the video recording establishes that Decker went back inside and was given $20 of the money back. The CI testified he gave the $20 to Romero and Decker to purchase cigarettes. Although the CI asked for change, Romero did not give him any change.

After the CI dropped Romero and Decker off at Romero's residence, he met with Detective Diaz. Detective Diaz retrieved the recording devices and took custody of the methamphetamine the CI purchased. Detective Diaz testified the CI did not return any money. Detective Diaz testified, to his knowledge, Romero did not receive any of the money intended to purchase the methamphetamine or any of the methamphetamine that was purchased. On the video recording, however, Romero made reference to making some money from the transaction, but later stated he "got a pack of cigarettes." The entire transaction lasted about an hour and half which Detective Diaz testified was an unusually long amount of time for a controlled buy.

Both Detective Diaz and the CI testified regarding the CI's criminal history, which Detective Diaz admitted called the CI's credibility into question and made it difficult to use him as a witness. Both Detective Diaz and the CI testified they could identify the CI's and Romero's voices on the recordings. In addition, the CI stated he recognized Romero's arm in the video by the tattoos and the bracelets or chains on Romero's wrist. A photograph of Romero's arm taken

from the video recording and a photograph of Romero's arm taken in the courtroom were introduced into evidence.

After hearing the evidence, the jury was charged that it could find Romero guilty either acting alone or as a party. The jury found Romero guilty, and the trial court sentenced him to fifteen years' imprisonment.

### VIDEO RECORDING

In his first issue, Romero asserts the trial court erred in admitting portions of the video recording containing statements he made regarding other transactions involving methamphetamine. Specifically, Romero contends the trial court erred in admitting statements he made about paying for tires with an "eightball" and about purchasing methamphetamine in another city.

"We review a trial court's decision to admit evidence for abuse of discretion." *Colone v. State*, 573 S.W.3d 249, 263–64 (Tex. Crim. App. 2019). "Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the 'zone of reasonable disagreement.'" *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

"Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible 'to prove the character of a person in order to show action in conformity therewith'; however, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (quoting TEX. R. EVID. 404(b)). "Rebuttal of a defensive theory is also one of the permissible purposes for which evidence may be admitted under Rule 404(b)." *Id*. Evidence admissible under Rule 404(b) may be inadmissible under rule 403 "if the probative value of the relevant evidence is substantially outweighed by the danger of unfair prejudice." *Gonzalez v. State*, 544 S.W.3d 363, 371 (Tex. Crim. App. 2018).

At a pretrial hearing, defense counsel objected to the admissibility of the statements in question asserting the statements involved a collateral issue and were overly prejudicial. The trial court overruled the objections, ruling the statements prove "motive, opportunity, intent, mistake or lack of accident."

The defensive theory developed at trial was that Romero was just a passenger in the CI's truck. The statements, therefore, were probative of his intent in being present in the vehicle. His involvement in prior transactions involving methamphetamine was also probative of his involvement in the transaction at issue and important to rebut his defensive theory. In addition, the time needed to develop the evidence was brief, and we do not believe the brief statements had the potential to impress the jury in some irrational, but nevertheless indelible way. *Colone*, 573 S.W.3d at 266 (noting a "Rule 403 analysis generally balances the following four factors, though they are not exclusive: (1) how probative the evidence is, (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence").

Even assuming, however, the trial court abused its discretion, the error would not require a reversal if "we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect." *Gonzalez*, 544 S.W.3d at 373. "In making this determination, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Id*. In this case, the video recordings themselves capture Romero's role in the transaction. Thus, the video recordings coupled with the CI's testimony was evidence supporting the jury's verdict. In addition, Romero made other statements on the video recording alluding to his drug use and involvement in drug transactions. For example, the very

fact that Romero had another contact through whom he knew the methamphetamine could be purchased showed his involvement in similar transactions. In response to the CI's question about Decker's reliability, Romero responded Decker could always get drugs. Romero further stated he was "waiting on a nine-pack." The CI testified a nine-pack is nine ounces, and one ounce is 28 grams. Finally, although the State's closing argument made reference to one of the statements about which Romero complains, the State's closing argument was more generally focused on Romero being a drug dealer, and the State referred to other evidence which also supported that argument to which no objection was made. Accordingly, even assuming the trial court erred in admitting the statements about which Romero complains, the error would not require reversal. Romero's first issue is overruled.

**PHOTOGRAPHS OF TATTOOS**

In his second issue, Romero contends the trial court erred in admitting the photographs of his tattoos. In the argument section of his brief, Romero first cites case law regarding the admissibility of evidence under Rule 403; however, Romero does not analyze why the photographs of his tattoos should have been excluded under Rule 403. Romero then cites this court's opinion in *Striblin v. State*, No. 04-17-00826-CR, 2019 WL 1049233 (Tex. App.—San Antonio Mar. 6, 2019, pet. ref'd) (mem. op., not designated for publication), to argue the trial court erred in admitting the photographs without a limiting instruction informing the jury that the evidence was admitted only for purposes of identification. Romero further argues defense counsel was not given the opportunity to request a limiting instruction. The State responds that Romero's complaints on appeal are not preserved for our review.

"Preservation of error is a systemic requirement on appeal." *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). "If an issue has not been preserved for appeal, neither the court of appeals nor [the Texas Court of Criminal Appeals] should address the merits of that issue." *Id*.

"To preserve error for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). In order to meet the specificity requirement, a party must "let the trial court know what he wants and why he feels himself entitled to it clearly enough for the judge to understand him." *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016). "[A] general or imprecise objection will not preserve error for appeal unless the legal basis for the objection is *obvious* to the court and to opposing counsel." *Id.* (internal quotation marks omitted). Finally, the issue on appeal "must comport with the objection made at trial." *Wilson*, 71 S.W.3d at 349. When the issue on appeal does not comport with the trial objection, "nothing is presented for review." *Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017).

At a pretrial hearing before jury selection, the trial court ordered that the State was allowed to take photographs of Romero's left arm, but did not rule on the photographs' admissibility. At a second pretrial hearing outside the presence of the jury and before opening statements, the issue of photographing Romero's left arm was revisited as follows:

> [Prosecutor]: Judge, in our haste when we discussed taking photographs of the defendant's arms, we indicated it was his left arm. In looking at the photographs it was actually the defendant's right arm that we need the photograph of so if we can get another order requiring that his right arm be taken photographs of.
> THE COURT: So ordered.
> [Defense counsel]: Well, under these circumstances I object, Your Honor.
> THE COURT: It's so ordered. Objection overruled.

When the trial court asked defense counsel for his objections to the admissibility of the photographs outside the presence of the jury during trial, the following exchange occurred:

> [Defense counsel]: Yeah. It's a Fifth Amendment issue, Judge. I mean I think he has a right to sit there and not testify and not do anything that could potentially incriminate himself and that includes rolling up his sleeves.
> [Prosecutor]: Your Honor, this is decidedly non-testimonial evidence.
> THE COURT: Yeah. I agree with you, [defense counsel], but the Court of Criminal Appeals and the United States Supreme Court does [sic] not so it will be admitted.

After the trial court made rulings regarding the admissibility of the criminal history of the CI outside the jury's presence, the trial court then announced a break, instructed the bailiff to have the jury ready after the break, and the following exchange occurred:

> THE COURT: And I am going to allow the photographs. Objection overruled. You now have your record.
> [Defense counsel]: All right.

Defense counsel's first objection was too general to inform the trial court of the specific grounds for the objection. Furthermore, because the trial court stated it was not ruling on admissibility at that time, the objection did not pertain to the admissibility of the photographs. When the trial court asked defense counsel for his objections regarding the admissibility of the photographs at trial, the only objection was on Fifth Amendment grounds. Accordingly, any appellate complaint that the photographs were overly prejudicial does not comport with the objection made at trial. Finally, although this court in *Striblin* referred to a limiting instruction being given in reaching a decision on whether the admission of photographs of the appellant's tattoo was overly prejudicial, it appears defense counsel's objections at trial preserved this complaint for our review. 2019 WL 1049233, at *2. In contrast, in the instant case, defense counsel did not request a limiting instruction at the time the evidence was admitted. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) (noting evidence admitted without a limiting instruction "is part of the general evidence and may be used for all purposes"). Although Romero argues defense counsel was not given the opportunity to request the instruction, defense counsel could have immediately requested a limiting instruction in response to the trial court's ruling that the photographs would be allowed as evidence and its announcement that defense counsel's objection was overruled for the record. Romero's second issue is overruled.

SUFFICIENCY

In his final issue, Romero contends the evidence is insufficient to support his conviction.[2] Specifically, Romero contends the evidence is insufficient to establish his intent to deliver the methamphetamine.[3]

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.

When the jury charge authorizes a jury to convict a defendant on more than one theory, "the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge." *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013). In this case, the jury charge included an instruction on the law of parties. Evidence can be sufficient to convict under the law of parties where a defendant "is physically present at the commission of the offense and encourages its commission by words or other agreement." *Salinas v. State*, 163 S.W.3d 734, 739 (Tex. Crim. App. 2005) (internal quotation marks omitted). In determining whether the accused participated as a party, the court may look to "events occurring before, during, and after the commission of the offense," and may rely on actions of the defendant which show "an understanding and common design to do the prohibited act." *Id*. at 739–40.

---

[2] Although Romero argues the evidence is legally and factually insufficient to support his conviction, "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

[3] We note the argument section of Romero's brief on this issue contains no citations to the evidence presented at trial but only quotes defense counsel's closing argument.

The evidence in the instant case clearly established Romero was physically present at the commission of the offense. Furthermore, the jury could have found from the evidence presented that Romero encouraged its commission by guiding the CI to Decker, actively participating in the exchange of the money for the methamphetamine, taking possession of and weighing the methamphetamine, and directing the actions that should be taken regarding the shortage in the weight of the methamphetamine. Accordingly, the evidence is legally sufficient to support the jury's verdict.

## CONCLUSION

The judgment of the trial court is affirmed.

Beth Watkins, Justice

DO NOT PUBLISH