In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-24-00154-CR
_____

### RONALD D. BABINO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 23DCCR1062**

### MEMORANDUM OPINION

A jury convicted Ronald D. Babino of murder and subsequently sentenced

him to twenty-two years of incarceration in the Texas Department of Criminal

Justice.[1] *See* Tex. Penal Code Ann. § 19.02(c) (classifying murder as a first-degree

---

[1]The trial court's judgment also lists Babino's name as "RONALD BABINO[,]" "RONALD DEMARD BABINO[,]" and "RONALD DEMARD BABINO JR[.]"

1

felony). In a single issue on appeal, Babino challenges the sufficiency of the evidence to support his conviction. We affirm.

## Background

### Indictment

At the time of trial, Babino's indictment alleged the following:

[Ronald Babino] did then and there, as a party or a co-conspirator, intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to wit: … aggravated robbery in which a firearm was introduced, displayed, discharged or used to shoot RICHARD SHILLOW, resulting in the death of RICHARD SHILLOW … and said death of RICHARD SHILLOW, was caused while the defendant was in the course of and in furtherance of the commission or attempt of said felony[.]

### Carolyn Lewis

Carloyn Lewis works as a 911 dispatcher and shift supervisor for the City of Beaumont 911 Center. In the late-night hours of March 27, 2022, and the early morning hours of March 28, 2022, the dispatch center received two separate calls regarding a homicide and unauthorized use of a motor vehicle. Copies of the 911 calls were admitted as evidence.

### Officer Michael Ballard

Officer Michael Ballard works as a patrol officer for the Beaumont Police Department. He described his educational and professional background and stated that he has worked for the Beaumont Police Department for five years. Ballard was working the night of March 27, 2022, when he received a call from dispatch

2

regarding a shooting at an apartment complex. When Ballard arrived, there were several other officers on the scene, and he observed a red Cadillac parked against a fence, and a black male was lying on the ground beside the vehicle's driver side door. The victim had "a couple of gunshot wounds" and was "barely breathing[.]" Emergency personnel arrived and began to render aid to the victim. Ballard's body camera footage from that night was admitted at trial. After EMS arrived, Ballard worked as "scene security[,] keeping anyone out of the scene."

Several surveillance video excerpts were admitted into evidence. According to Ballard, the video evidence shows two black males with hoods over their heads walking across the courtyard area of the Virginia Estate Manor apartment complex. This was remarkable to Ballard because "[g]enerally in this part of the day when the sun's out and someone's wearing a hoodie or their hood over their head, they're doing it to conceal their identity." Ballard testified the video shows a "subject peeking around the corner[,]" and then "running away back the direction he came." In another portion of the same video exhibit, Ballard testified that it shows a red Cadillac come into the frame, and that vehicle then backs into a parking spot. According to Ballard, "The two previous black males are walking to the complex, now approaching the vehicle." Someone exits the driver's side of the red Cadillac and speaks to the other two males, and the red Cadillac drives away. Later the two black males appear on the video to be "standing and waiting[,]" until the red Cadillac

3

returns. The two men then approach the Cadillac, going to the "[p]assenger side and opening up the door to speak with [the driver]." The same two men appear to then be running away, and the driver of the red Cadillac collapses on the ground. Ballard and emergency responders then arrive on the scene.

Describing another video, taken from a different angle, Ballard testified that a silver Infinity appears on the video and enters through the main entrance and backs into a parking space before two suspects exit the vehicle. The two men then walk an indirect route in the direction of the red Cadillac. According to Ballard, another person appears on the video and appears to be standing outside the silver Infinity. Later, the video shows the silver Infinity "tak[ing] off[,]" the two subjects who had approached the red Cadillac appear in frame, and the silver Infinity "stop[s], open[s] the door," and the two men get inside.

**Michelle Ceja**

Michelle Ceja is employed as a crime scene technician for the Beaumont Police Department. Ceja stated that she has been employed as a crime scene technician for six years and described her job duties, including documenting evidence by taking photos, making videos, and gathering and taking swabs of biological material. She was called to the scene on March 27, 2022, and observed a red Cadillac in the parking lot of the apartment complex. The victim had already been transported to the hospital, and she observed bullet casings and a white rag with

4

blood on the ground by the driver's side of the red Cadillac. Ceja's photographs of the crime scene were admitted into evidence at trial. In the early morning hours of the following day, Ceja left the scene and went to process a "silver [Infinity] vehicle [that] was located at another apartment complex." Photographs of the silver Infinity were also admitted into evidence. Ceja also photographed a GMC truck found at another location, and she noted that two guns were found inside the GMC truck.

**Alize Ballard**

Alize Ballard testified that she was the girlfriend of the victim, Richard Shillow. She confirmed that on March 27, 2022, Shillow drove a red Cadillac, and around 7:30 pm she was on the phone talking to him. During the conversation, she heard his car make a sound indicating that he was backing up, and then Shillow screamed out that he had been shot. She did not know if Shillow used or sold marijuana.

**Dr. Tommy Brown**

Doctor Tommy Brown is a retired forensic pathologist. Brown described his educational and professional background and estimated that he had performed over 15,000 autopsies. Brown reviewed the autopsy performed on Shillow on March 30, 2022, and stated that Shillow had two gunshot wounds, and the manner of his death was homicide.

**Officer Adam Little**

Officer Adam Little is an officer who has worked with the Beaumont Police Department since 2010. Little testified that he typically works the "[m]idnight" shift. He described his professional background and noted that he is the K9 handler for the department. In the early morning hours of March 28, 2022, Little was working with his K9 partner when he received notification that a vehicle had been stolen but "a subject…was able to track the location of [the] stolen vehicle." When he reached the area of the stolen vehicle, another officer observed a vehicle matching the stolen vehicle's description and was in pursuit. According to Little, this was a high-speed chase, and the occupants of the vehicle were "attempting to evade police and not be caught." The high-speed chase ended in an apartment complex parking lot, and all the vehicle's occupants exited the car and fled on foot. Little testified he "[e]xit[ed] out of the [police] vehicle, t[old] them to stop and brought my K9 partner with me and then pursued them on foot until I was unable to pursue them anymore." He described the driver of the vehicle as having a "[b]right white shirt and red pants." Eventually, all the stolen vehicle's occupants, except the driver, were apprehended. Later, the police also located and arrested the driver. Little's patrol car camera and body camera footage from the chase were admitted at trial.

Surveillance footage from a gas station was also admitted into evidence. According to Little, the video from the gas station shows a "silver [sedan] with a

mismatched bumper" pulling into the gas station, but no one exits the vehicle or goes to pump gas. A black GMC pickup truck then enters the convenience store parking lot, and the driver exits the vehicle and enters the convenience store. The GMC pickup truck's headlights remain on, which indicates to Little the truck is still running. Little testified that this GMC pickup truck appears to match the vehicle involved in the high-speed chase of the stolen vehicle. Next, according to Little, the video shows a sedan pull up next to the GMC pickup truck. The driver of the sedan then exits the vehicle and walks toward the front of the convenience store. Little identified the driver of the sedan as having the same white shirt and red pants as the individual from the high-speed chase. Little testified that the driver of the sedan "continually looks into the driver area of the black GMC[,]" then a person in the passenger side of the sedan "gets out and then quickly enters the driver seat of the GMC and drives away." Little concluded that the sedan's occupants "watched this vehicle pull in and watched the gentleman leave it running and then they jumped in and stole it." He believed the driver of the sedan "was looking to make sure there was nobody else inside the vehicle." Based on the surveillance footage, Little identified Babino as the person wearing the white shirt and red pants and driving the silver sedan that night.

**Officer Alejandro Guadian**

Officer Alejandro Guadian has worked as an officer with the Beaumont Police Department for five years. He detailed his educational and professional background and stated he responded to a shooting on March 27, 2022, around 7:30 pm at the Virginia Manor Estates Apartments. He was also on patrol in the early morning hours of March 28, 2022, and assisted the officers in pursuit of the stolen GMC pickup truck, and "after lengthy pursuit[,]" Guadian apprehended a person whom he identified in court as Babino. When he searched Babino, he found multiple "clear baggies containing a green, leafy substance, which [he] suspected to be marijuana [based on his] police training and experience[.]" During a second search, he also found a lighter and a key to an Infinity. Guadian then transported Babino to the Beaumont Police Station to speak to detectives and later to the Jefferson County Correctional Facility. Footage from Guadian's body camera was admitted at trial.

**Detective Tomora Hamilton**

Detective Tomora Hamilton is a detective with the Beaumont Police Department and currently works as an investigator in the Administration Department. Hamilton testified regarding her professional and educational background and stated that on March 27, 2022, she was called around 7:00 pm about a shooting at an apartment complex. When she arrived, she observed a red Cadillac

8

and the victim had already been transported to the hospital. She described what she did that night as follows.

> Speaking to officers, reviewing videos, talking to the witnesses. At one point once the video -- once I saw the video, I was able to take screenshots of two subjects that was shown in the video walking towards the car. I was able to get that to PCR asking for community assistance in identifying the suspects.

She identified the two suspects who approached the red Cadillac as Kaylon Johnson and Joseph Freeman. Hamilton later learned the Infinity was driven by Babino, and another passenger was identified as Charles Verdine. Hamilton stated that Freeman was shot after he approached the red Cadillac, and Babino transported him to Verdine's girlfriend's house.

Hamilton interviewed Babino after his arrest for driving the stolen black GMC pickup truck. A copy of her interview of Babino was played for the jury. In the interview, Babino told Hamilton he does not drive any other vehicles, but Hamilton determined he was lying. Hamilton testified that Babino lied several times during his interview. Babino told investigators that he was looking to "make some money[]" that day, and that someone came up with "[a] lick" which Hamilton said is an illegal way to make money, or "rob somebody." Babino told Hamilton that the plan was to give Johnson and Freeman a ride and "[g]et a lick[.]" Hamilton testified that Babino told her that Johnson and Freeman walked up to Shillow, and Freeman was shot during the interaction. Hamilton believed that Babino assisted Verdine in the taking

9

of the black GMC hours after dropping off Freeman and Johnson following Shillow's shooting. According to Hamilton, Verdine was one of the coconspirators from the Virginia Manor Estates Apartment complex shooting. Hamilton testified that based on her investigation, training and experience, Babino's and Verdine's participation in the unauthorized use of the vehicle indicated Babino was also a coconspirator in the shooting.

Additional surveillance video footage was admitted at trial. According to Hamilton, the video shows a gray Infinity pulling into the parking lot of the Virgina Manor Estates Apartment complex and initially parking closer to where it entered the parking lot, but ultimately parking further away from the entrance. Hamilton surmised that if the Infinity had parked closer to the red Cadillac, the driver "would have been able to see it." The video showed the driver of the gray Infinity wearing a "[w]hite top, reddish pants." Johnson and Freeman can be observed on the video when they are exiting the Infinity, and they are wearing hoodies with the hoods pulled over their heads. Hamilton explained this indicated Johnson and Freeman wanted to conceal their identity, because the video showed other people wearing shorts and t-shirts. The video shows Shillow driving into the parking lot in a red Cadillac and going to the back of the apartment complex. Hamilton testified that Johnson and Freeman open the passenger side door of the red Cadillac and "[s]econds" later are observed "running away from the red Cadillac."

As Johnson and Freeman start running away from the red Cadillac, the Infinity "pulls out of the parking spot and waits." In her opinion, although the driver of the Infinity could not see the red Cadillac, "[h]earing the shots being fired[]" prompted the driver to pull out of the parking spot. Hamilton testified that the video then shows the door of the Infinity open, which aids Johnson and Freeman getting into the Infinity. The Infinity then leaves the parking lot. Hamilton testified that the bullet casings found in the red Cadillac match the caliber of one of the guns the police later found in the stolen GMC pickup truck.

During cross-examination, Hamilton testified she knew that Shillow and the Infinity's occupants already met earlier, before the shooting, and she believed they were setting up a drug deal. She believed that the Infinity parked where the driver of the red Cadillac could not see the car to "give Mr. Shillow a sense of confidence that he won't be robbed." She testified that she did not search Babino's phone and that another cell phone extraction from that night did not reveal any evidence showing Babino's involvement.

**Jury Charge and Verdict**

The jury charge instructed the jury that to find Babino guilty, the jury must agree on the following elements beyond a reasonable doubt:

11

**LAW SPECIFIC TO THE CASE**

The defendant, Ronald D[.] Babino, stands charged by indictment with the offense of Murder. Specifically, the accusation is that the defendant is guilty of Murder under two alternative theories.

**Party Liability**

First, the state contends that Kaylon Johnson and/or Joseph Freeman committed Murder and the defendant is criminally responsible for this offense as a party because the defendant solicited, encouraged, directed, aided or attempted to aid Kaylon Johnson and/or Joseph Freeman in committing it.

**Co-conspirator Liability**

Second, the state contends that Kaylon Johnson and/or Joseph Freeman committed Murder and the defendant is criminally responsible for this offense as a co-conspirator.

[…]

A person commits the offense of Murder if the person commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

A person commits the offense of Aggravated Robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, the person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon.

[…]

A member of a conspiracy to commit one felony offense is guilty of another felony offense committed by one of his co-conspirators when that other felony offense was committed in furtherance of the original

12

unlawful conspiracy and was one that should have been anticipated as a result of the unlawful conspiracy. Under those circumstances, all co-conspirators are guilty of the felony offense actually committed by one member of the conspiracy, though the rest of them had no intent to commit it.

A defendant conspires with others to commit a felony offense if—

1. the defendant intends that a felony offense be committed;

2. the defendant agrees with one or more persons that one or more of them engage in conduct that would constitute the felony offense; and

3. one or more of them performs an overt act in pursuance of the agreement.

Murder and Aggravated Robbery are felony offenses.

If you all agree the state has proved, beyond a reasonable doubt, each of the elements of the offense of Murder, and you all agree the state has proved, beyond a reasonable doubt, either element 1 or 2 listed above, meaning you do not find that the parties and/or co-conspirators acted in self-defense, you must find the defendant "guilty."

The jury found Babino guilty of murder, and on appeal, Babino asserts the evidence is insufficient to support his conviction.

## Analysis

The jury is the exclusive judge of the credibility of the evidence and the weight to be given to that evidence. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). As such, the jury is responsible for resolving conflicts in the testimony, is free to believe some, all, or none of a witness's testimony, and may assign as much or as little weight to a witness's testimony as it sees fit. *Id*. Jurors may also draw

13

reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id*. at 16.

When examining whether a criminal conviction is supported by legally sufficient evidence, we compare the evidence to the elements of the offense as defined by a hypothetically correct charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). We consider all the evidence, viewed in the light most favorable to the verdict, along with the inferences that could reasonably be drawn from the evidence. *Hooper*, 214 S.W.3d at 13. We do not assess the credibility of the evidence, reweigh the evidence, nor substitute our judgment for that of the jury. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The evidence is legally sufficient to support the conviction if any rational trier of fact could have found each of the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). "Each fact need not point directly and independently to a defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (citation omitted); *see also Garcia v. State*, 667 S.W.3d 756, 761–62 (Tex. Crim. App. 2023) (citation omitted) ("A proper review of evidentiary sufficiency considers the cumulative force of the evidence.").

A person commits murder if he "intentionally or knowingly causes the death of an individual[.]" Tex. Penal Code Ann. § 19.02(b)(1). "Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death." *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) (citation omitted). A person acts intentionally with respect to a result of his conduct "when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a). A person acts knowingly with respect to a result of his conduct "when he is aware that his conduct is reasonably certain to cause the result." *Id*. § 6.03(b).

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id*. § 7.01(a); *Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011). A person is criminally responsible for an offense committed by the conduct of another if "acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" *See* Tex. Penal Code Ann. § 7.02(a)(2); *Adames*, 353 S.W.3d at 862."'Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement.'" *Salinas v. State*, 163 S.W.3d 734, 739 (Tex. Crim. App. 2005) (quoting *Ransom v. State*, 920

S.W.2d 288, 302 (Tex. Crim. App. 1994)). Party participation may be shown by events occurring before, during, and after the commission of the offense, and may be demonstrated by actions showing an understanding and common design to do the prohibited act. *Id*. at 739–40.

A criminal conspiracy arises when multiple people agree to commit an offense and "one or more of them performs an overt act in pursuance of the agreement." Tex. Penal Code Ann. § 15.02(a)(2). The Texas Penal Code also provides that

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the offense actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id*. § 7.02(b). For a defendant to be found guilty as a party to the secondary offense (here, murder), the jury must determine that the secondary offense was committed in furtherance of the unlawful purpose of the conspiracy (here, aggravated robbery) and was one that the co-conspirators should have anticipated as a potential result of carrying out that conspiracy. *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (concluding that the question before an appellate court is whether it was rational for the jury to infer that the accused should have anticipated that the secondary offense would occur as a result of the primary offense). The State is not required to prove that the defendant actually anticipated the commission of the

16

secondary offense, "only that the crime is one that *should* have been anticipated." *Id*.

On this record, the jury could have reasonably inferred that Babino, Freeman and Johnson lured Shillow to the apartment complex so they could commit an aggravated robbery of Shillow. *Hooper*, 214 S.W.3d at 13. The jury heard testimony that Babino was looking to make money that day or "[g]et a lick[,]" which Hamilton stated could be interpreted as a robbery. The jury also heard testimony that Babino was the driver of the gray Infinity that day and that the car was positioned in a way to hide from Shillow's view when he entered the apartment complex. The same car then picked up Freeman and Johnson after Shillow was shot and left the apartment complex. Hamilton testified that Freeman and Johnson returned from their meeting with Shillow with a gun. Later, the jury heard testimony that Babino worked as a lookout to steal a GMC truck and that a gun matching the gun used to kill Shillow was found in the stolen truck. The jury could have reasonably inferred from the evidence that Babino, Freeman, and Johnson were armed and planned to rob Shillow.

By his own admission to Hamilton, Babino wanted to get "a lick" or commit a robbery that night. Babino aided or attempted to aide Freeman and Johnson in the commission of the offense of aggravated robbery, and he is also criminally responsible as a party to the offense of murder because his co-conspirators, Johnson

17

or Freeman, intentionally or knowingly caused Shillow's death in furtherance of the aggravated robbery, and the murder was a result that Babino should have anticipated as a consequence of carrying out the conspiracy to commit the offense of aggravated robbery. *Ervin v. State*, 333 S.W.3d 187, 201 (Tex. App.—Houston 2010, pet. ref'd) (explaining a jury could find appellant committed murder "in an attempt to carry out a conspiracy to commit aggravated robbery with a deadly weapon, and, though appellant had no intent to commit the murder, it was committed in furtherance of the unlawful purpose and should have been anticipated as a result of the carrying out of the conspiracy"); *Yancy v. State*, No. 03-23-00251-CR, 2025 Tex. App. LEXIS 6222, at *17 (Tex. App.—Austin Aug. 15, 2025, no pet.) (mem. op., not designated for publication) (same); *Dale v. State*, No. 05-24-00742-CR, 2025 Tex. App. LEXIS 4011, at *8 (Tex. App.—Dallas June 11, 2025, no pet.) (mem. op., not designated for publication) ("Under the law of parties, by initiating the conspiracy that resulted in [the victim's] death, appellant can be found guilty of murder even if appellant did not actually kill [the victim] himself."). Even if Babino did not intend for Johnson or Freeman to shoot Shillow during the robbery, a reasonable jury could have concluded that Babino should have anticipated that a murder was possible. *See Anderson*, 416 S.W.3d at 889, *Ervin*, 333 S.W.3d at 201. Based on the evidence, the jury could have reasonably concluded that Babino anticipated, or should have anticipated, the possibility that Johnson or Freeman may shoot Shillow during the

course of the robbery. *Anderson,* 416 S.W.3d at 889; *see also* Tex. Penal Code Ann. § 7.02(b).

After viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. The State offered evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that Babino acted "with intent to promote or assist" in committing Shillow's murder and aided others in committing the offense. *See* Tex. Penal Code Ann. §§ 7.01(a) (parties to offenses); 7.02(a)(2) (criminal responsibility for conduct of another); 19.02(b)(1) (murder). Accordingly, we conclude the evidence is sufficient to support the jury's verdict.

We overrule Babino's issue on appeal and affirm the judgment of the trial court.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on August 22, 2025
Opinion Delivered February 4, 2026
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

19